Jeffrey Eugene FREY, Petitioner and Appellant,

v.

STATE of North Dakota, Respondent and Appellee.

Civ. No. 930156.

Supreme Court of North Dakota.

Dec. 6, 1993.

Anthony F. Renzo (argued), of Babich & Nickerson, Des Moines, IA, and Jonathan T. Garaas (appearance), of Garaas Law Firm, Fargo, for petitioner and appellant.

Galen J. Mack (argued), State's Atty., Rugby, for respondent and appellee.

MESCHKE, Justice.

Jeffrey Eugene Frey appealed from a judgment denying him the new trial that he sought in his application for post-conviction relief. We affirm.

Frey was convicted of murder and aggravated assault for the shooting death of Douglas J. Bjornson and the shooting injury of Scott Ottum on September 5, 1987, during a hunting excursion. We affirmed. *State v. Frey*, 441 N.W.2d 668 (N.D.1989). Frey applied for post-conviction relief, seeking a new trial. The trial court denied relief. Frey appeals, arguing that trial counsel impermissibly interfered with his right to testify; that he received ineffective assistance of counsel

for his defense of self defense; that he did not knowingly and intelligently waive lesser-included-offense instructions; that trial counsel's ineffectiveness deprived him of a fair trial; and that the statute defining the crime of AA murder, as applied to him, violates the Fourteenth Amendment to the United States Constitution.

■■■ The burden of establishing grounds for post-conviction relief rests upon the applicant. *State v. Kunkel,* 366 N.W.2d 799, 803 (N.D.1985). "[A] trial court's findings of fact in actions for post-conviction relief under chapter 29–32.1 will not be disturbed unless clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P." *Houle v. State,* 482 N.W.2d 24, 25–26 (N.D.1992). The trial court is in a better position to judge the credibility and demeanor of the witnesses than is this court. *Stoppleworth v. State,* 501 N.W.2d 325 (N.D. 1993). We recently reiterated a number of principles for reviewing claims of ineffective assistance of counsel:

> To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient representation by counsel and prejudice caused by the deficient representation. *Sampson v. State,* 506 N.W.2d 722 (N.D.1993). The burden of proving an ineffective assistance of counsel claim is on the defendant and, in reviewing the claim, we are mindful that it is for trial counsel and not the trial courts to determine trial strategy and tactics. *State v. Wilson,* 488 N.W.2d 618 (N.D. 1992). Consequently, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Zeno,* 490 N.W.2d 711 (N.D.1992). We will not second guess an unsuccessful counsel's defense strategy through the distorting effects of hindsight. *See Houle v. State,* 482 N.W.2d 24 (N.D.1992).

*State v. Norman,* 507 N.W.2d 522, 525 (N.D. 1993). An unsuccessful trial strategy does not make defense counsel's assistance defective.

The trial court found that, as a trial tactic with the advice of counsel, Frey did not testify in his own defense and waived his right to jury instructions on lesser included offenses within the charge of class AA murder. The court also found that if Frey had testified and if lesser-included-offense instructions had been given, the outcome of the trial would not have changed. The court further found:

> 4. Based on his appraisal of the Applicant's appearance, demeanor, and the effect such might have on a conservative jury; and on the Applicant's prior inconsistent statements (one or more of which were under oath); and counsel's conclusion that Applicant would commit perjury if he testified, Counsel advised Applicant not to testify in his own behalf.

> \*       \*       \*       \*       \*       \*

> 12. In view of said prior inconsistent statements, Applicant's testimony presented in the hearing on his Application, (and which he said he would have offered if he had testified at the trial) is not believable.

The court concluded that Frey was not deprived of any statutory or constitutional rights, was not deprived of effective assistance of counsel, and was not entitled to a new trial.

Frey contends that trial counsel impermissibly interfered with his right to testify on his own behalf, "based upon counsel's mere belief that his client was going to present perjurious testimony." Frey alleges that he acquiesced in counsel's refusal to allow him to testify because he believed that if he did not, counsel would withdraw. Frey relies upon *Whiteside v. Scurr,* 744 F.2d 1323, 1328 (8th Cir.1984), *reversed, Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986):

> "[W]here ... the veracity or falsity of the defendant's testimony is conjectural, the ethical dilemma does not arise." *Butler v. United States,* 414 A.2d 844, 850 (D.C.App. 1980), *citing Johnson v. United States,* 404 A.2d 162, 164 (D.C.App.1979).... Mere suspicion or inconsistent statements by the defendant alone are insufficient to establish that the defendant's testimony would have been false.

Frey's trial counsel had more than conjecture, suspicion, or inconsistent statements for

his belief that Frey planned to present perjurious testimony on his self-defense defense.

Frey falsely denied to investigating officers that he had been hunting or that his shotgun had been fired. In a "hypnotic induced sodium amytol interview" approximately two months after the shooting, Frey specifically denied shooting Bjornson or shooting at Ottum. Trial counsel testified that he suggested to Frey in a conversation a few weeks before trial that self defense was the only defense that made "any sense based upon the physical evidence." In response, Frey "told me in so many words that that is not what happened. He said that to me very firmly."

█ "A lawyer may refuse to offer evidence that the lawyer believes is false." NDRPC 3.3(b). A part of the comment to Rule 3.3 elaborates:

> If a lawyer knows evidence to be false, the lawyer must refuse to offer it regardless of a client's wishes and regardless of whether it is to be offered by a client or some other person. If a lawyer believes such evidence to be false, the lawyer may refuse to offer the evidence without violation of the lawyer's ethical duty to represent the client diligently.

In *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123, the United States Supreme Court said that an attorney's revelation of his client's perjury to the court was a permissible response to actual perjury and that withdrawal from representation was a permissible response to a client's threatened perjury. The Court said:

> In *Strickland [v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], we recognized counsel's duty of loyalty and his "overarching duty to advocate the defendant's cause." *Ibid.* Plainly, that duty is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth. Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law.

475 U.S. at 166, 106 S.Ct. at 994, 89 L.Ed.2d at 134. A lawyer's strategy to avoid offering evidence that he believes will be false does not violate the lawyer's ethical duty to his client.

█ In addition to counsel's belief that Frey would commit perjury if he testified (which counsel testified he did not discuss with Frey because "he knew it was a lie, I knew it was a lie, we didn't have to talk about that"), counsel advised Frey of another reason why Frey should not testify when the prosecution rested its case:

> As I can recall today I advised him that we had been successful in keeping out the business about drugs, marijuana, cocaine, hashish, and that for—and I felt that that was—if he was to get on the witness stand we were running the risk of opening up the door and getting all of that information in front of the jury which I felt would be very damaging.
>
> I told him that, you know, it was a tough call, that this was a dangerous game, that the stakes were high, but I could make the cognitive argument at that point in time that the circumstantial evidence which the State presented was consistent with the self-defense theory. And I believe it was somewhat of a (Inaudible) to have a self-defense instruction without Mr. Frey having testified. That doesn't always happen.

We conclude that trial counsel advised Frey not to take the stand for good and sufficient reasons, that Frey accepted the advice, and that, as *Nix v. Whiteside,* 475 U.S. at 171, 106 S.Ct. at 996, 89 L.Ed.2d at 137, recognized, counsel represented Frey "well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland."*

█ Frey contends that "trial counsel was ineffective in telling the jury in his opening statement that it would hear testimony as to certain specific facts regarding Mr. Frey's acting in self-defense and then failing to present Mr. Frey's testimony." Frey asserts:

> Even though [counsel] believed before the trial started that Mr. Frey's intended testimony was false and not offerable to the jury, he nonetheless proceeded in obvious

bad faith to tell the jury that they would hear evidence of the very facts which he believed to be a lie. . . . They never heard this evidence because Mr. Frey, the only source of the evidence, never testified.

Trial counsel testified that he had not yet decided if he would advise Frey to testify when he referred to facts about self-defense in his opening statement. The trial court found:

15. Applicant's counsel's references to specific facts relating to self-defense in his opening statement, may have been part of his strategy at the beginning, but tactics and strategy often change in the course of a trial.

After the prosecution rested, trial counsel considered what evidence he had been able to keep out, the evidence that would come in if Frey testified, the risks and benefits of having Frey testify, the evidence before the jury that arguably supported Frey's self-defense theory, the self-defense instruction the court was going to give, the burden of proof, and the presumption of innocence. Trial counsel elected to advise Frey not to take the stand. Frey accepted the advice. We cannot conclude that trial counsel's conduct was outside the range of reasonable professional conduct. Trial counsel did not provide defective assistance in counseling Frey not to testify.

■ Frey contends that he "did *not* make a knowing and intelligent waiver of his right to lesser included offense instructions." He argues that "[t]here is conflict in the testimony as to whether Mr. Frey was advised at all of his right to lesser-included instructions under North Dakota law." Trial counsel testified that he advised Frey about lesser included offenses, possible sentences, and the possibility of pleading guilty to manslaughter or negligent homicide, and that those matters were discussed on more than one occasion. The trial court found that Frey "waived the right to have instructions as to lesser included offenses . . . given to the jury." The trial court's finding is not clearly erroneous.

■ Frey contends that any waiver he made was invalid because any advice he received on lesser included offenses was given before he learned he would not be testifying. He argues:

The advisability of all-or-nothing tactics dramatically changed when Mr. Frey learned he would not be testifying given that there were no other witnesses who could have taken the stand to support the self-defense theory [counsel] was advancing. Under these circumstances, Mr. Frey could not have made a knowing and intelligent waiver of the instructions when he was under the impression that he would be taking the stand to tell his version of the shooting incident.

We are not persuaded that the advisability of all-or-nothing tactics changed when Frey accepted trial counsel's advice to not testify. A decision to forego testifying does not mean that an earlier decision to waive instructions on lesser included offenses was not a knowing and intelligent waiver. Nothing in the record shows that Frey indicated to his attorney that he wished to abandon his all-or-nothing tactics when he accepted the advice to not testify. Frey had a right to waive lesser-included-offense instructions, and he did so, thereby adopting an all-or-nothing risk. *State v. Frey*, 441 N.W.2d 668. As we said in *Stoppleworth v. State*, 501 N.W.2d 325, 328 (N.D.1993): "We will not second-guess the trial strategy and tactics of the attorney."

Frey contends that "the cumulative impact of trial counsel's ineffectiveness on critical and constitutionally fundamental issues deprived Mr. Frey of a fair trial." We have not found trial counsel's conduct defective. Frey was not deprived of a fair trial.

■ Frey contends that our AA murder statute as applied "is both void-for-vagueness and violates equal protection guarantees." NDCC 12.1–16–01(1)(b) says:

A person is guilty of murder, a class AA felony, if the person:

\* \* \* \* \* \*

Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life."

In *State v. Tweed*, 491 N.W.2d 412, 419 (N.D. 1992), quoting *State v. Hanson*, 256 N.W.2d 364, 369 (N.D.1977), we held that the chal-

lenged language "is not void for vagueness, instead it is an 'understandable and distinct definition' of the conduct prohibited."

Frey contends that application of NDCC 12.1–16–01(1)(b) to him violated his right to equal protection under the Fourteenth Amendment. He relies on *State v. Hagge*, 224 N.W.2d 560 (N.D.1974), *Skinner v. State of Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), and *Roush v. White*, 389 F.Supp. 396 (N.D.Ohio 1975), for the proposition that "[w]hen two statutes prohibit the same conduct but result in different penalties a person suffering the more serious penalty has been denied equal protection of the laws." Frey asserts that there is no "option but to declare [his] conviction of AA murder, which could have been based on the 'extreme indifference' element, to be a violation of equal protection where [he] could have been charged and convicted of the lesser offense of manslaughter for the same conduct." We disagree.

We do not have two statutes that prohibit the same conduct. NDCC 12.1–16–02 declares: "A person is guilty of manslaughter, a class B felony, if he recklessly causes the death of another human being." NDCC 12.1–16–01(1) declares: "A person is guilty of murder, a class AA felony, if the person: ... b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life." These two statutes prohibit different conduct. There are grading elements in these statutes that distinguish one offense from the other and justify different penalties. We have held that the grading phrase "extreme indifference to the value of human life" is an " 'understandable and distinct definition' of the conduct prohibited" by NDCC 12.1–16–01(1)(b), and "is a reasonable and rational method of distinguishing the greater crime [class AA murder] from the lesser crime [class B manslaughter]." *State v. Tweed*, 491 N.W.2d at 419, quoting *State v. Hanson*, 256 N.W.2d at 369. The statutes set different penalties "according to the severity of the risk created" by the accused's conduct and, therefore, justify different treatment. *State v. Hanson*, 256 N.W.2d at 369. We do not have here "an arbitrary discrimination between classes similarly situated," *Roush v.*

*White*, 389 F.Supp. at 402, that is prohibited by the Equal Protection clause of the Fourteenth Amendment.

We conclude that Frey's trial counsel did not impermissibly interfere with Frey's right to testify, that Frey was not deprived of the effective assistance of counsel, that Frey waived his right to lesser-included-offense instructions, that Frey was not deprived of a fair trial, and that the class AA murder statute is not unconstitutional. The trial court's judgment denying Frey's request for post-conviction relief is affirmed.

SANDSTROM, Acting C.J., VERNON R. PEDERSON and RALPH J. ERICKSTAD, Surrogate Judges, and WILLIAM F. HODNY, District Judge, concur.

RALPH J. ERICKSTAD and VERNON R. PEDERSON, Surrogate Judges, and WILLIAM F. HODNY, District Judge, sitting in place VANDE WALLE, C.J., LEVINE and NEUMANN, JJ., disqualified.