# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-1849

_____

| | | |
|---|---|---|
| Jeffrey Eugene Frey, | * | |
| | * | |
| Plaintiff - Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of North Dakota. |
| | * | |
| Timothy Schuetzle, Warden, North | * | |
| Dakota State Penitentiary, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: March 13, 1998
Filed: August 13, 1998

_____

Before WOLLMAN and HANSEN, Circuit Judges, and GOLDBERG,[1] Judge.

_____

HANSEN, Circuit Judge.

This case is before this court for a second time. Previously, we reversed the district court's grant of a writ of habeas corpus to Jeffrey Frey, who was convicted of murder and aggravated assault in North Dakota, because the basis for granting relief was not alleged in his petition. See Frey v. Schuetzle, 78 F.3d 359, 361 (8th Cir. 1996). We remanded the case to the district court for further proceedings. See id. On

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

remand, the district court [2] denied Frey's petition for a writ of habeas corpus under 28 U.S.C. § 2254. Frey appeals, arguing that he did not knowingly and voluntarily waive his constitutional right to testify on his own behalf and that he received ineffective assistance of counsel. We affirm.

## I.

Frey's convictions stem from the shooting death of Douglas J. Bjornson and shooting injuries sustained by Scott Ottum in the early morning of September 5, 1987. The following factual recitation is taken principally from the opinion of the Supreme Court of North Dakota on Frey's direct appeal. See State v. Frey, 441 N.W.2d 668 (N.D. 1989). On September 4, 1987, Frey and nine other men, including Bjornson and Ottum, went to Pierce County, North Dakota, to go crane hunting. After meeting at a local tavern, the men camped near some abandoned farm buildings adjacent to the southeast corner of a field. A number of the hunters, including Frey and Bjornson, continued to drink well into the night and some smoked marijuana and used other drugs. Shortly before dawn the next morning, three of the hunters left the campsite and went through a gate towards the north end of the field. Soon thereafter a second group of six hunters, including Frey, Bjornson, and Ottum, left the campsite and began walking along a fence line at the south edge of the field. Ottum returned to the campsite to escape the mosquitos, but the rest of the group continued to walk the field. Frey and Bjornson took positions near some haystacks. The other hunters in the group continued along the southern edge of the field.

A short time later, Frey shot Bjornson two or three times with a twelve gauge shotgun from a distance of approximately 200 feet. Frey then went to the north end of the field where he shot a crane and left it in the field. He returned to the gate near the

_____

[2]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

campsite and shot at Bjornson's pickup truck. He then proceeded to the pickup and fired three more shots towards the abandoned buildings and his own pickup truck. Two pellets ricocheted off the pickup or buildings and hit Ottum in the head. Ottum had been standing between the abandoned buildings and Frey's pickup and could not identify who had shot at him.

Ottum then drove another hunter's car into the field, where he found Bjornson's body near a haystack. Ottum was later taken to a hospital and treated for his injuries. The remaining hunters returned to the campsite and found Frey lying in his pickup holding his shotgun. Frey would not respond to their questions. Later, law enforcement officers arrived and spoke with Frey. Frey said that he had not been hunting that morning and that he had not fired his gun. He also denied any knowledge of the shootings. Frey signed a sworn statement that afternoon denying any knowledge of the shootings and stating that he had not been hunting that morning.

Frey was charged with murder for the death of Bjornson and attempted murder for Ottum's injuries. Frey retained an experienced criminal trial attorney to represent him. Frey initially gave no explanation to his counsel about what had happened the day of the shootings, saying only that he could not remember what had happened. As the scheduled trial date neared, Frey and his attorney met to discuss trial strategy. Frey's counsel was concerned because although there were no eyewitnesses to either shooting, the state's evidence showed that Frey shot both Bjornson and Ottum. Frey's attorney concluded that the only available defense to the charges was a self-defense theory. He outlined this theory to Frey at their meeting, but Frey told him that it had not happened that way.

As the trial neared, Frey began to tell his attorney that the shooting had been in self-defense and he recounted details from the morning of the shooting consistent with the theory. At trial, counsel presented a self-defense theory and the judge instructed the jury on self-defense. The defense used an "all or nothing" strategy—successfully

objecting to the state's request to instruct the jury on lesser included homicide offenses. Frey did not testify in his own defense. Frey's attorney argued to the jury that the state's circumstantial evidence did not prove the elements of AA murder beyond a reasonable doubt and that the evidence was consistent with Frey shooting in self-defense.

The jury found Frey guilty of one count of AA murder and one count of aggravated assault. He was sentenced to a combined term of 30 years of imprisonment. Frey's convictions were affirmed on direct appeal by the Supreme Court of North Dakota. Frey, 441 N.W.2d at 674. Frey's state court petition for postconviction relief was denied by the state trial court and by the Supreme Court of North Dakota. Frey v. State, 509 N.W.2d 261 (N.D. 1993).

Frey then filed a habeas corpus petition and the district court referred the case to a magistrate judge for a report and recommendation. After an evidentiary hearing, the magistrate judge concluded that Frey did not knowingly and voluntarily waive his constitutional right to testify on his own behalf. Based on this determination, the magistrate judge recommended granting Frey habeas relief. The district court adopted the magistrate judge's report and recommendation and granted Frey a writ of habeas corpus, ruling that he did not knowingly and voluntarily waive his constitutional right to testify.

The state appealed. We reversed the grant of a writ of habeas corpus because the basis for relief, that Frey had been denied his constitutional right to testify, had not been alleged in his petition. Frey, 78 F.3d at 361. We remanded the case to the district court with directions to resolve each and every claim Frey raised in his habeas petition, noting that Frey could seek permission to amend his petition to include additional claims for relief. Id. at 361-62.

On remand, the district court granted Frey permission to amend his habeas petition to assert a stand alone claim alleging that he did not knowingly and voluntarily waive his constitutional right to testify on his own behalf. His petition also alleged, among other claims, that his trial counsel had been ineffective. The magistrate judge ruled, with the consent of the parties, that the record would not be supplemented and that no additional evidence would be received. The magistrate judge then issued a report and recommendation concluding that Frey's petition should be granted because Frey did not knowingly and voluntarily waive his right to testify and he was denied effective assistance of counsel. The district court rejected the magistrate judge's recommendation and denied Frey's habeas petition. Frey appeals.

## II. Analysis

## A. Right to Testify

Frey first argues that he did not knowingly and voluntarily waive his right to testify on his own behalf. The state initially contends that this claim is procedurally defaulted because Frey failed to raise it as a stand alone claim in his state postconviction proceedings. The state argues that Frey only raised this issue as a component of his ineffective assistance of counsel claims.

Before a federal court may reach the merits of a claim in a habeas petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curium); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." McCall, 114 F.3d at 757 (internal quotations omitted). "[A]lthough the constitutional substance of a claim must be apparent, it is not

necessary to cite book and verse on the federal constitution." Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995) (internal quotation omitted), cert. denied, 116 S. Ct. 1578 (1996).

The record shows that Frey fairly presented the substance of his claim that he did not knowingly and voluntarily waive his constitutional right to testify. In his appeal from the denial of state postconviction relief, the Supreme Court of North Dakota listed as one of five separate issues Frey's claim "that trial counsel impermissibly interfered with his right to testify." Frey, 509 N.W.2d at 262. Further, as the magistrate judge noted, Frey's brief to the Supreme Court of North Dakota specifically claimed that this interference by counsel violated his constitutional right to testify on his own behalf. (See Appellant's adden. at 21 n.4.) We conclude that the claim has not been procedurally defaulted.

We now address the merits of Frey's claim, "review[ing] the district court's legal conclusions de novo and its factual findings for clear error." Miller v. Lock, 108 F.3d 868, 870 (8th Cir. 1997). We defer to the state court's findings of fact if fairly supported by the record. See Pryor v. Norris, 103 F.3d 710, 712-13 (8th Cir. 1997); 28 U.S.C. § 2254(d) (1994).

A criminal defendant has a constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 49 (1987); United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir. 1987). This right is derived from the Fourteenth Amendment's due process clause, the Sixth Amendment's Compulsory Process Clause, and the Fifth Amendment's prohibition on compelled testimony. Rock, 483 U.S. at 51-53. "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." Bernloehr, 833 F.2d at 751. A defendant's waiver of this right must be made knowingly and voluntarily. Id. We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify. Id. at

751-52. We stressed that under such circumstances the defendant must act "affirmatively" rather than apparently "acquiesc[ing] in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome." Id. (internal quotation omitted).

Frey's argument that he did not knowingly and voluntarily waive his right to testify is substantially dependent upon his testimony at the state postconviction and federal habeas evidentiary hearings. At these hearings, Frey claimed that he told his attorney that he wished to testify, whereupon counsel told him that he should not testify. Frey claims that he believed that his trial attorney alone had the power to decide whether Frey would testify. Frey also explained that he would have testified at trial that he shot both Bjornson and Ottum while he was afraid and panicking, consistent with the self-defense theory.

Frey's attorney stated that he informed Frey that he had a right to testify, but that he advised against testifying. (See Appellee's app. at 120, 188.) According to counsel, Frey "consented to [this] advice." (Id. at 120.) Frey was also present during a hearing before the state trial court in which the judge stated, "I'm glad we are all in 100 percent agreement that Mr. Frey may testify if he wants to, . . . and, of course, has no obligation to testify if he chooses not to." (Id. at 26.) Frey, "an apparently mature and sophisticated businessman," voiced "no objection when his counsel rested without calling [Frey] to the stand," further suggesting he voluntarily and knowingly chose not to testify. See Bernloehr, 833 F.2d at 751-52. In postconviction proceedings, the state district court found that Frey waived his right to testify and exercised his right not to testify after being advised of his right to testify by counsel. (Appellant's app. at 194-97.) This finding was affirmed by the Supreme Court of North Dakota on appeal. See Frey, 509 N.W.2d at 265 ("Trial counsel elected to advise Frey not to take the stand. Frey accepted the advice."). While "waiver" is a mixed question of law and fact, see United States v. Caldwell, 954 F.2d 496, 504 (8th Cir.), cert. denied, 506 U.S. 819 (1992), these factual findings of advice and acceptance are clearly supported by the

record, and we will not second guess them.  See Pryor, 103 F.3d at 712-13; 28 U.S.C. § 2254(d).

Considering all of the above, the district court correctly ruled that Frey voluntarily and knowingly waived his constitutional right testify.  Frey, after receiving the advice of counsel, chose to exercise his constitutional right not to testify.  His postconviction dissatisfaction with this decision does not change our analysis.  We hold that Frey voluntarily and knowingly waived his constitutional right to testify on his own behalf, and we reject his claim to the contrary.[3]

## B.  Ineffective Assistance of Counsel

Frey next argues that he was denied his constitutional right to effective assistance of counsel.  Specifically, Frey claims that his attorney failed to explain to him why Frey should not testify and misled him into believing that the ultimate decision on whether Frey would testify would be made by counsel.  Because an ineffective assistance of counsel claim "presents a mixed question of law and fact," we review the district

---

[3]Because Frey did in fact knowingly and voluntarily waive his right to testify, we need not address the state's alternative argument that any error was harmless.  We note that it is unclear if harmless error analysis applies to the denial of a defendant's right to testify.  Compare, Ortega v. O'Leary, 843 F.2d 258, 262 (7th Cir.), cert. denied, 488 U.S. 841 (1988) (applying harmless error analysis to denial of defendant's right to testify), with Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991) ("As a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt."); Wright v. Estelle, 572 F.2d 1071, 1080-84 (5th Cir.) (en banc) (Godbold, J., dissenting) (rejecting application of harmless error analysis to claim that defendant was denied the right to testify), cert. denied, 439 U.S. 1004 (1978); United States v. Butts, 630 F. Supp. 1145, 1148 (D. Me. 1986) ("[A] defendant's right to testify in a criminal proceeding against him [is] so basic to a fair trial that its infraction can never be treated as a harmless error.").

-8-

court's legal conclusions de novo and its factual findings for clear error. Dodd v. Nix, 48 F.3d 1071, 1073 (8th Cir.1995). We again defer to the state court's finding of fact if fairly supported by the record. See Pryor, 103 F.3d at 712-13; 28 U.S.C. § 2254(d).

We evaluate ineffective assistance of counsel claims under the familiar two part test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984). "First, the petitioner must show that counsel's performance was deficient." Id. "Second, the petitioner must show that the deficient performance prejudiced the defense" so as to deprive the petitioner of a fair trial. Id. To show that counsel's performance was deficient, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. In evaluating counsel's performance, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional" competence. Id. at 689. To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Although the state asks us to affirm the district court based on the Supreme Court's holding in Nix v. Whiteside, 475 U.S. 157, 171-75 (1986), that failure to cooperate in presenting the defendant's perjured testimony does not render counsel ineffective, we need not reach this issue.[4] Our review of the record convinces us that Frey's attorney acted within the wide range of reasonable competence demanded by the Sixth Amendment by advising Frey not to testify regardless of counsel's belief that Frey's testimony would have been false.

---

[4]Frey's attorney stated that he believed Frey's testimony would have been false and that he did not want Frey to testify for that reason. Counsel did not inform Frey that this was a reason he advised Frey not to testify. Frey's attorney explained that he did not tell Frey that he thought his testimony was false because "[Frey] knew it was a lie, I knew it was a lie, we didn't have to talk about that." (Appellee's app. at 116.)

Initially, we reject Frey's claim that his attorney misled him into believing that counsel had the ultimate authority to decide whether Frey would testify. We have held that Frey knowingly and voluntarily waived his right to testify. Counsel advised Frey that he had a right to testify and advised against exercising that right. Frey accepted his attorney's advice and chose not to take the witness stand. Frey has failed to show that he was not aware that he could testify on his own behalf.

Counsel listed several strategic reasons for advising Frey to exercise his Fifth Amendment right not to testify. Frey's attorney testified that more evidence of Frey's drug and alcohol use would have been admitted and that, in his view, this would have hurt the chances for an acquittal before what he characterized as a conservative jury from a sparsely populated North Dakota county. He was also concerned about Frey's demeanor on the witness stand. Counsel advised Frey that he could argue to the jury that the state's circumstantial evidence was consistent with the self-defense theory without subjecting Frey to damaging cross-examination. He summed up his advice by telling Frey that he thought they should "quit while [they were] ahead." (Appellee's app. at 188.)

Counsel's reasons for advising Frey not to testify show that the advice was reasonable trial strategy based on counsel's professional evaluation of the case. Frey has not shown that his experienced trial attorney's performance was deficient. We therefore hold that Frey was provided with effective assistance of counsel.

III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.