**UNITED STATES of America,
Plaintiff,**

v.

**Jason Anthony HAYES, Defendant.**

**No. CRIM.01–155.**

United States District Court,
S.D. Iowa,
Central Division.

June 5, 2002.

**945**

Debra L. Scorpiniti, U.S. Atty., Des Moines, IA, for U.S.

Thomas D. Hanson, Hanson, Bjork & Russell LLP, Des Moines, IA, B. John Bruns, III, Nicholas T. Drees, Iowa Fed. Public defender, Des Moines, IA, Ryan B. Moorman, West Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, Chief Judge.

A trial in the above-captioned case was held on February 4, 2002, and a jury found defendant guilty of possessing a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. section 922(g)(9), and as a felon in possession of a firearm, in violation of 18 U.S.C. section 922(g)(1). The key issue at the trial was whether the gun found at the scene of defendant's arrest was in his possession, as it was found on the ground in the vicinity of his arrest. Before the Court now is defendant's March 15 motion for a new trial. Defendant filed a brief in support of this motion on May 9, and defendant also filed an affidavit on May 20. The government filed a resistance on May 21. A hearing was held on May 24. The matter is fully submitted.

In support of his motion for a new trial, defendant argues his trial counsel was ineffective. Defendant asserts his attorney should have moved to strike three jurors for cause, or used his peremptory strikes, to remove three jurors who eventually ended up on the jury panel that decided this case. Additionally, defendant asserts that he did not voluntarily and knowingly waive his constitutional right to testify.

I. Governing Law

█ Federal Rule of Criminal Procedure 33 states in part: "On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." However, " '[t]he authority to grant new trials should be used sparingly and with caution.' " *United States v. Huerta–Orozco,* 132 F.Supp.2d 763, 773 (N.D.Iowa 2001) (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980)). "Motions for new trial ... are difficult to win" and are to be " 'viewed with disfavor.' " *United States v. Grey Bear,* 116 F.3d 349, 350 (8th Cir.1997) (quoting *United States v. Coleman,* 460 F.2d 1038, 1040 (8th Cir.1972) (per curiam)).

II. Whether Defense Counsel Was Ineffective In Handling Juror Selection

Assistant Federal Public Defender John Burns represented defendant, Jason Anthony Hayes, at this trial. Burns has been in his current position for approximately three years. He has been an attorney for more than seventeen years, and has spent his career performing public criminal defense work. Burns was appointed to represent Hayes, and was his second attorney in this case.

Hayes states that he objected to three jurors who served on the panel, and that they were seated over his objection to Burns. *See* Hayes Affidavit at ¶ 5. Burns

did not attempt to remove these jurors for cause, and defendant's peremptory strikes were not used to remove these jurors. The first juror defendant now states he objected to was a male named Eichorn. Hayes objected to Eichorn sitting on the jury panel because he is an National Rifle Association ("NRA") member, he is involved in a paint ball gun business, and his wife works closely with members of law enforcement. The second juror at issue is a male named McManus. He had recently served on a case in this District where Burns was the attorney for the defendant, and the jury found that defendant guilty. And the third juror at issue was a female named Johnson, and defendant now indicates that he simply did not like her demeanor. *See* Defendant's Brief in Support of Motion for New Trial at 5–7.

At the hearing, Burns testified that he had a conversation during jury selection with defendant about juror McManus. Burns testified that he decided not to exercise a peremptory strike on McManus because of his past experience in state court. In at least one case there, Burns was successful in gaining an acquittal for a client when a juror on the panel had previously been on a panel that convicted another one of his clients. Burns did not testify regarding either of the other jurors now at issue. The record indicates that Burns did not move to strike any of the three jurors for cause because he correctly assumed that none of the requests would have been granted.

As this part of defendant's motion rests on his argument that his trial counsel was ineffective, this motion is also governed by the two-part test stated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. 2052.

 The first prong, "professional performance," requires this Court consider whether defense counsel's juror selection decisions " 'caused his representation of [the petitioner] to fall below acceptable professional standards.' " *Walters v. Maschner*, 151 F.Supp.2d 1068, 1087 (N.D.Iowa 2001) (quotation omitted). "[R]easonable competence, the sort expected of the 'ordinary fallible lawyer' . . . is required by the Sixth Amendment.' " *Id.* (quotation omitted). "Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel." *Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992) (quoted in *Walters*, 151 F.Supp.2d at 1087). In *Johnson v. Armontrout*, 961 F.2d at 755, an attorney's performance was deemed "clearly deficient" when during jury selection he did not question or strike four jurors who heard damaging testimony about his client in another trial. The Court determined that there was nothing "strategic" about counsel's decision not to question these four jurors. *Id.*

 In this case, the Court finds Burns performance with respect to juror selection satisfies the first prong of *Strickland* as it meets acceptable professional standards. Burns explained why he felt McManus would make a good juror, and

though in hindsight this may not have been an effective strategy, it was a strategic decision based on his past experience representing criminal defendants. Otherwise, Burns' testimony indicates that he did not recall any conversations with defendant regarding juror Eichorn or Johnson. While Burns could have chosen to strike Eichorn because of his affiliation with the NRA or other association with guns or law enforcement, and may have stricken Johnson because of her demeanor, the Court does not find that the decision to leave these jurors on the panel was below acceptable professional standards. While the strategy for leaving these jurors on the panel is not clear, the Court finds that defendant has not carried his burden of showing that these jurors were likely biased against him.

However, even assuming Burns' juror selection decisions were deficient, the Court finds Hayes cannot show these decisions prejudiced his defense. In *Johnson v. Norris*, 207 F.3d 515 (8th Cir.), *cert. denied* 531 U.S. 886, 121 S.Ct. 205, 148 L.Ed.2d 144 (2000), the Court found that despite counsel's deficient performance during jury selection that defendant could not show prejudice. In that capital murder case involving the death penalty, counsel for the defendant's strategy was to select an all-Catholic jury because he believed they would all oppose the death penalty on religious grounds, and counsel did not adequately question the jurors during voir dire. *Id.* at 520. Despite this deficiency, the Court found that "no prejudice can possibly be shown" as it found that it had "no way of knowing who would have gotten on the jury if counsel had adopted a different strategy during voir dire, or if these hypothetical [replacement] jurors would have been more favorable to petitioner." *Id.; see also Walters*, 151 F.Supp.2d at 1088–90 (holding that defendant could not show prejudice due to attorney's jury selection decisions because

defendant could not show that hypothetical juror who would have replaced allegedly biased juror would have been more favorable). Likewise in the case at hand, defendant has made no showing that the outcome of this case would have been different if Burns would have had the three jurors at issue removed from the panel.

III. **Whether Defendant Knowingly and Voluntarily Waived His Right to Testify**

Hayes is a twenty-eight year old man who has been extensively involved in the criminal justice system. He asserts that he has always pled guilty to charges he has faced in the past, and never been to trial. He does not have a high school diploma, but does have a general equivalency degree ("G.E.D.") that he earned in 1997 while serving a criminal sentence in a state correctional facility. Hayes asserts that he did not know he had a constitutional right to testify at his trial.

In his affidavit, Hayes states that Burns never informed him of his constitutional right to testify. Affidavit of Jason Anthony Hayes ("Hayes Affidavit"), at ¶ 6. "At no time during any discussions with Mr. Burns was there any serious or lengthy discussion of whether or not I should testify at trial in my own behalf." *See* at ¶ 3. Hayes indicates in his affidavit that Burns did warn him that if he testified and was later found guilty, his sentence could be enhanced for obstruction of justice. *Id.* At the hearing, Hayes contradicted this statement and indicated Burns did not tell him about the risk of sentence enhancement if he testified. In the affidavit, Hayes also states that Burns informed him that if he testified, then the government might be allowed to introduce witness testimony that Hayes had been in possession of a gun at a time prior to his arrest. *Id.* Hayes asserts that towards the end of the trial, "I again attempted to talk to Burns about testifying. I was simply told by him that

he did not think he needed me to testify and rested the case." *Id.* at ¶ 4.

At the hearing, Burns testified that he met with Hayes between four and six times prior to the trial. These meetings were at the jail where Hayes was being held, and lasted one hour or less. Burns testified that during these meetings, he and his client discussed his client's side of the story and generally discussed what Hayes would testify to at trial. Burns did not recollect ever telling Hayes that he had a constitutional right to testify at his trial. Burns testified that, as a general practice, all of the attorneys in the Federal Public Defender's office generally send each of their clients a booklet that outlines many aspects of the representation and outlines the client's right to testify. However, Burns testified that he was uncertain whether Hayes received this booklet, and that it was possible he did not as Burns became his attorney close to the time of trial.

Prior to the start of trial, Burns indicated to the Court that he did not think his client would testify, but that a decision was not yet final. At trial, the testimony of a witness, Coleman, was presented to the jury via reading of the transcript from a state court proceeding. In that testimony, Coleman provided favorable testimony indicating that the gun found at the scene did not come from Hayes. However, Coleman had later recanted that statement, and this recantation was also presented to

the jury by the government. Hayes states that at that time, he decided he wanted to testify on his own behalf.

Burns testified at the May 24 hearing that he never told Hayes he could not testify, and the record indicates that his testimony was contemplated as a possibility before and during trial. Burns indicated that defendant wanted to testify at trial, but that he advised Hayes against it because he felt it was "too risky." Burns considered the possibility of perjury, a possible enhancement of the sentence if defendant testified, and the possibility of factual inconsistencies from Hayes' testimony as reasons for not having him testify. Burns also indicated, and the government confirmed, that the testimony of another witness would have been presented in rebuttal had Hayes testified at trial.[1] Burns testified at the hearing that he believed they had presented enough evidence to gain an acquittal without Hayes taking the stand. Therefore, defendant rested its case without having defendant testify.

Prior to the close of defendant's case, Burns did not engage in a dialogue with Hayes on the record to inform him of his constitutional right to testify and to establish that he was knowingly and voluntarily waiving that right. While it is this Court's practice to engage a criminal defendant who is choosing not testify in a dialogue regarding his right to testify, it did not do so in this instance.[2]

---

1. Prior to the start of trial, the government had issued a 404(b) notice alerting defendant to the possibility of the testimony of this witness. This witness, who was in a holding cell in the courthouse on the day of the trial, would have testified that in the fall of 2000 he had seen Hayes with a firearm on his person.

2. The Court recognizes that it is debatable whether a trial court should ask a defendant whether he is waiving his right to testify, as it has been stated that " 'the determination of

whether the defendant will testify is an important part of trial strategy best left to the defendant and counsel without the intrusion of the trial court ... '." *United States v. Leggett*, 162 F.3d 237, 245 (3rd Cir.1998) (quotation omitted). However, this Court in its experience has found placing this question and defendant's response on the record is appropriate as it is defendant's personal right, and not that of his counsel, that is being waived. It is unfortunate that the Court did not pose this question to Hayes at trial in this case. *See*

 Defendants have a right to testify in their own defense under the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination.[3] *See Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (finding a state law excluding all hypnotically refreshed testimony infringed on defendant's right to testify, and therefore was unconstitutional). " 'Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right.' " *Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir.1998) (quoting *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987)).

> A defendant's waiver of this right must be made knowingly and voluntarily .... We have previously held that a knowing and voluntary waiver of the right may be found based on a defendant's silence when his counsel rests without calling him to testify.... We stressed that under such circumstances the defendant must act 'affirmatively' rather than apparently 'acquiesc[ing]' in his counsel's advice that he not testify, and then later claim[ing] that his will to testify was overcome.

*Id.* (citations omitted).

In *Bernloehr*, the defendant's attorney at trial indicated during opening statements that the defendant would testify. *Bernloehr*, 833 F.2d at 750. Then, during the presentation of the defendant's case, defense counsel announced that it would call defendant to the stand after a recess. *Id.* However, defendant, who was a real estate broker and investor charged with mail fraud, did not testify based on advice of his attorney. *Id.* at 750-51. In response to defendant's post-trial argument that he was denied the right to testify and that he did not knowingly and voluntarily waive the right, the Eighth Circuit unequivocally stated " '[t]he accused must act affirmatively' in these circumstances." *Id.* at 752 (citing *United States v. Systems Architects, Inc.*, 757 F.2d 373, 375 (1st Cir.) *cert. denied*, 474 U.S. 847, 106 S.Ct. 139, 88 L.Ed.2d 115 (1985); *United States v. Janoe*, 720 F.2d 1156, 1161 n. 9 (10th Cir.1983), *cert. denied* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984); and 18 U.S.C. § 3481 ("the person charged shall, *at his own request*, be a competent witness") (emphasis added)). "The defendant may not, as Bernloehr did, indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.' " *Bernloehr*, 833 F.2d at 752 (citation omitted). The *Bernloehr* Court ultimately concluded that the defendant was not "muzzled" and that his right to testify was waived by him. *Id.*

 In this case, the record indicates that Hayes' experienced and capable trial counsel, John Burns, advised him that it was "too risky" for him to testify. While neither Burns nor the Court engaged Hayes in a dialogue to fully inform him of his constitutional right on the record, nor did either elicit his knowing and voluntary waiver on the record, defendant's silence indicates such a waiver as a matter of law. *See Bernloehr*, 833 F.2d at 752. When Burns rested defendant's case, Hayes did not affirmatively act to indicate he wanted to testify.

---

*generally* Timothy P. O'Neill, *Vindicating the Defendant's Constitutional Right to Testify at Criminal Trial: The Need for An On-the-Record Waiver,* 51 U.PITT. L. REV.809 (1990).

**3.** "The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

Defendant makes much of the fact that defendant in *Bernloehr* was a "sophisticated businessman" and Hayes is not. *Id.* at 751. The Court does not find this factual distinction controlling. Hayes and Burns discussed and contemplated the possibility of Hayes testifying on his own behalf both before and during trial. Nothing in the record indicates that Hayes believed he did not have a choice in testifying, nor does it indicate that Hayes mistakenly believed the decision was completely Burns' decision to make. The record does not show that Hayes was coerced into not testifying by Burns. While Hayes had never been to trial before, the Court finds his extensive involvement in the criminal justice system placed him in a position equivalent to a sophisticated businessman with respect to knowing about his right to testify at trial.[4]

Alternatively, even assuming defendant's constitutional right to testify was *not* knowingly and voluntarily waived by defendant, the Court finds such a violation would be harmless error.[5] The Eighth Circuit has stated that "it is unclear if harmless error analysis applies to the denial of a defendant's right to testify." *Frey v. Schuetzle,* 151 F.3d 893, 898 n. 3 (8th Cir.1998) (citing cases demonstrating split amongst courts on the issue). The Court in *Frey* determined that the defendant in that case had knowingly and volun-

tarily waived his right to testify, and found it did not need to reach the issue of whether such a violation could be found harmless error. *Id.* The United States Supreme Court has held that violations of constitutional rights *can* be subject to harmless error analysis, *see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and it has since held that many constitutional errors can be harmless. This Court finds the Eighth Circuit would likely agree with *Ortega v. O'Leary,* 843 F.2d 258, 262 (7th Cir.), *cert. denied* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988), and hold that harmless error analysis applies to defendant's right to testify.

In this case, assuming Hayes did not knowingly and voluntarily waive his right to testify, the Court finds such a constitutional violation would constitute harmless error. Burns indicated that he was concerned Hayes was going to perjure himself if he testified, and otherwise subject himself to increased sentencing penalties. Burns indicated he was concerned Hayes' testimony was going to be factually inconsistent with other defense evidence. Additionally, Burns testified that he was concerned about the rebuttal witness the government was going to call if Hayes testified and the Rule 404(b) evidence the government might have been allowed to present. Therefore, the Court finds that if defendant did not knowingly and volun-

---

**4.** Additionally, the Court does not find Hayes to be a credible witness. Evidence of this is in the contradicting testimony Hayes gave regarding whether Burns informed him of the possibility of enhanced penalties at the sentencing phase if he testified and was found guilty. In his affidavit, Hayes indicated that Burns informed him of this possibility, but at the hearing, Hayes testified that Burns never informed him of this possibility.

**5.** Hayes has phrased his claim that he did not knowingly and voluntarily waive his right to testify as an ineffective assistance of counsel claim. Simultaneously, however, he argues

that the second prong of *Strickland* does not apply to such a claim, citing *United States v. Butts,* 630 F.Supp. 1145, 1148 (D.Maine 1986) as authority. This Court believes that based on the law of this Circuit, as stated in *Frey* and *Bernhoeler,* this claim is properly addressed not as an ineffective assistance of counsel claim, but rather as a claim that a constitutional right was violated. Therefore, the Court will go on to address whether harmless error analysis applies. The Court finds that if it addressed this as an ineffective assistance of counsel claim, it would have to apply *Strickland* and its second prong.

tarily waive his right to testify, this constitutional violation was harmless error that did not likely affect the outcome of the trial in this case.

IV. Conclusion

Defendant's motion for a new trial is denied. Defendant's sentencing hearing shall be held on June 21, 2002 at 3:00 p.m.

IT IS SO ORDERED.