# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3693

_____

Faye D. Copeland,                              *
                                               *
        Appellee,                       *
                                               *
      v.                                *
                                               *
James Washington,                              *
                                               *
        Appellant.                      *

                        Appeals from the United States
                        District Court for the
                        Western District of Missouri.

_____

No. 99-3694

_____

Faye D. Copeland,                              *
                                               *
        Appellant,                      *
                                               *
      v.                                *
                                               *
James Washington,                              *
                                               *
        Appellee.                       *

_____

Submitted:  September 13, 2000

Filed:  November 30, 2000

_____

Before HANSEN, HEANEY, and MORRIS S. ARNOLD, Circuit Judges.

_____

HEANEY, Circuit Judge.

Faye D. Copeland was convicted of five counts of first degree murder on a theory of accomplice liability in state court.  She was sentenced to death on four of the counts, and on one count she was sentenced to life in prison without the possibility of parole.  The Missouri Supreme Court upheld her convictions and sentences on direct appeal and denied her claims for post-conviction relief.  See State v. Copeland, 928 S.W.2d 828 (Mo. 1996) (en banc), cert. denied, 519 U.S. 112 (1997). On federal habeas review, the district court upheld her convictions, but determined that the penalty phase was constitutionally flawed due to (1) the prosecutor's improper closing argument and (2) ineffective assistance based on counsel's failure to object to the improper argument.  See Copeland v. Washington, No. 97-1123-CV-W-3 (W.D. Mo. Aug. 4, 1999).  Accordingly, the district court granted the writ ordering the state to hold a new sentencing hearing or to commute the petitioner's sentence to life in prison without parole.  The state has appealed the reduction in sentence, and the defendant has cross-appealed, seeking a new trial on the basis of numerous claimed errors in the proceedings, including the handling of battered spouse evidence at trial and during the penalty phase, the sufficiency of the evidence of guilt and of the aggravating factors. We agree with the district court that the prosecutor's improper closing argument deprived the petitioner of a fair sentencing hearing, but that she is not entitled to a new trial on the basis of the claimed errors.  We therefore affirm the order of the district court in its entirety.

2

## I. FACTS

We summarize the evidence in the light most favorable to the verdict. The petitioner and her husband, Ray Copeland, were involved in a fraudulent check and cattle-buying scheme that ultimately led to the shootings of five homeless men. See State v. Copeland, 928 S.W.2d 828, 834 (Mo. 1996) (en banc), cert. denied, 519 U.S. 112 (1997). Ray would visit a local homeless shelter and offer transients work. Ray and the petitioner would take the transient to a post office to rent a box, and to a bank to open an account. Ray would then have the transient bid on cattle at an auction and write checks to pay for the cattle. Before the checks would bounce, Ray would quickly resell the cattle. To prevent any investigation of the fraud, Ray would then shoot the transient. It was only when one transient, Jack McCormick, escaped and notified the police that the Copelands were apprehended. See id.

Although Ray was the primary instigator of the scheme, testimony at trial also described the petitioner's knowledge and involvement. The petitioner stored the victims' clothes in a closet; assisted with the paperwork related to the fraudulent checks; warned McCormick, who had seen what he thought was a human skull near the barn, to stay away from that portion of the property; and tried to cover up any connection between her, the transients, and her husband. Perhaps the strongest evidence was a list of names in the petitioner's handwriting that had x's marked next to the victim's names, and letters written from the petitioner to her husband suggesting the knowledge that something incriminating would show up from the search of their farm. See id. at 835-836. There was no evidence that the petitioner had herself shot anyone; she had no history of violence. Thus, the state's theory of first-degree murder was predicated on accomplice liability.[1]

---

[1] In a separate proceeding, Ray Copeland was later convicted and sentenced to death for the murders. He was ill at the time of trial and died in jail a few months later.

## II. IMPROPER CLOSING ARGUMENT

A.      Penalty Phase

The petitioner claims that the prosecutor's closing argument at the penalty phase of her trial, along with the failure of defense counsel to object to the argument, deprived her of a fair sentencing hearing. We agree. The prosecutor began his closing at the penalty phase by referring to a "television news report . . . about gangs in Los Angeles" and stating that "members of the street gangs were murdering each other" in a violent fight for turf. The prosecutor then went on to state that the gang shootings made his "blood boil," and that this case made him want to "weep and cry" because it was "the same thing, right here in our backyards." After a biblical reference to the killings as the "modern equivalent of thirty pieces of silver," the prosecutor summed up his closing by giving his opinion that "there has never, ever been a more complete and utter disregard for the sanctity of human life as this case . . . [t]he state of Missouri claims from you the ultimate sentence of this case of death. Stand firm." In his rebuttal argument, the prosecutor emphasized the impact on the victims' families with a reference to his own young son, as well as the defense attorney's son. Because the prosecutor's closing argument in the penalty case was brief, the improper remarks constituted the core of the prosecutor's closing.

The Missouri Supreme Court held that the comments comparing petitioner's crimes to the gang shootings in Los Angeles as well as every other crime in Missouri's history were improper, and that the comments "may arguably have constituted reversible error had a timely objection been raised." State v. Copeland, 928 S.W.2d at 843. The court did not perform a separate analysis for the arguments in the guilt and penalty phases of the trial. Ultimately, the Missouri Supreme Court declined to find that the improper comments in the penalty case reached the level of a "manifest

4

injustice" given the evidence presented against the petitioner at the guilt phase. See id. at 844.

On habeas review, the district court concluded that the prosecutor's argument had seriously prejudiced the defendant:

> Although the evidence of petitioner's guilt was strong, the case for the death penalty was rather weak. There was no evidence that petitioner personally shot any of the victims. . . . There was substantial evidence that the primary actor in the entire scheme was Ray and that petitioner held a very minor role. In fact, most of the evidence at trial involved Ray's actions and not petitioner's. There appears to be no doubt that Ray not only was the scheme's primary actor, but was also its creator. Finally there was substantial evidence that Ray dominated and controlled his wife.

> Although these factors would not obviate guilt, they demonstrate that this is far from the typical situation in which a criminal defendant is sentenced to death. Nonetheless, the prosecutor tried to turn this case into such a case and did so by employing improper means. By raising the specter of hapless citizens gunned down by roving criminal gangs, the prosecutor inappropriately drew an analogy to completely different -- significantly more heinous -- criminals. Then, the prosecutor improperly elevated the severity of the crime by (1) assuring the jury that, despite any misgivings it might have about setting the penalty at death, it could be assured that this was the worst crime to ever occur in the state of Missouri, and (2) suggesting that if the worst case ever did not deserve the death penalty, then no case did. Still another effect was to imply that "lesser murders" had resulted in the death penalty.

Copeland v. Washington, No. 97-1123-CV-W-3, slip op. at 31-32.

It is important to note at the outset that the state does not attempt to defend the content of the prosecutor's closing argument. At oral argument, the state conceded that

the remarks in the prosecutor's closing argument were improper. Rather, the state argues that a lack of Supreme Court precedent on a prosecutor's closing argument during the penalty phase of a capital trial bars the petitioner's claim under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2253-2254 (AEDPA).

As a threshold matter, the parties disagree about the correct standard of review to be applied under AEDPA. That question has been answered in the recent Supreme Court decision <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1523 (2000). There, Justice O'Connor set out the following standard of review:

> Section 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court also stated that, under the "unreasonable application" clause, a "federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id</u>. at 1521. <u>See also</u> <u>Evans v. Rogerson</u>,

2000 WL 1182805, at *2 -*3 (8th Cir. D. Iowa Aug. 22, 2000) (reciting <u>Williams</u> standard).

The question still remains whether our previous discussions of the standard of review survive <u>Williams</u>. While articulating the new standard, the Supreme Court also rejected the standard previously used by the Fourth Circuit in <u>Green v. French</u>, 143 F.3d 865, 870 (4th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1090 (1999), which stated that an unreasonable application only occurred if the state court applied federal law "in a manner that reasonable jurists would all agree is unreasonable." In <u>Long v. Humphrey</u>, 184 F.3d 758 (8th Cir. 1999), a case decided before <u>Williams</u>, we declined to follow the approach of the Fourth Circuit. We decided two cases after <u>Long</u>, but before <u>Williams</u>, that seemed to add an additional element to the AEDPA inquiry by stating that "[f]ederal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." <u>James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999). See <u>Sublett v. Dormire</u>, 217 F.3d 598 (8th Cir. 1999) (same). Regardless of the status of this standard after <u>Williams</u>, the language from these two cases does indicate that the standard under AEDPA is a heightened one. As the Supreme Court held, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams,</u> 120 S. Ct. at 1522. Thus we apply the newly-announced standard in <u>Williams</u> here.

The state next argues that because the Supreme Court has not discussed the impact of a prosecutor's improper closing argument during the penalty phase of a capital case, AEDPA bars the petitioner's claim. Contrary to the state's assertion, it is apparent to us that there are Supreme Court decisions on penalty phase closing arguments. See <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 340 n.7 (1985) (death sentence vacated because prosecutor's improper closing argument during penalty phase made

it appear to jury that responsibility for the death penalty would be borne by appellate court rather than by jury itself); Romano v. Oklahoma, 512 U.S. 1, 3 (1994) (considering petitioner's assertion that closing argument in capital sentencing hearing violated petitioner's due process rights, although concluding on the facts that no rights were violated). There are also Supreme Court decisions on guilt phase closing arguments that are relevant. See Donnelly v. DeCristoforo, 416 U.S. 637, 643 (1974) (concluding that improper closing argument in guilt phase reaches level of constitutional error if prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process"); Darden v. Wainwright, 477 U.S. 168, 181 (1986) (same).[2] Further, in Paxton v. Ward, 199 F.3d 1197, 1217-18 (10th Cir. 1999), the Tenth Circuit considered a claim regarding an improper closing argument in the penalty phase of a capital case. While discussing the highly deferential standard of review under AEDPA at some length, the Tenth Circuit concluded that the closing argument constituted prosecutorial misconduct and warranted relief. Therefore, despite the state's claim that there is no precedent on penalty phase closing arguments, the Supreme Court cases demonstrate otherwise.

Turning to the merits of the issue, then, we must determine whether the applicable Supreme Court precedents on closing argument were unreasonably applied, depriving the petitioner of due process during her sentencing hearing. We believe that relief is warranted. Aside from the Supreme Court cases previously cited, three recent

---

[2]Indeed, if there is any distinction between guilt and penalty phase arguments, it would seem that there should be a more searching review of the penalty phase as the Eighth Amendment is implicated. Cf. California v. Ramos, 463 U.S. 992, 998-999 (1983) ("The Court . . . has recognized the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination"); Welsh S.White, Prosecutors' Closing Arguments at the Penalty Trial, 18 N.Y.U. Rev. L. & Soc. Change 297 (1991) (suggesting that courts have been increasing review of closing arguments at sentencing hearings and categorizing improper arguments requiring reversal into several groups, including arguments in which prosecuting attorney has personally vouched for death penalty).

Eighth Circuit cases have vacated a death sentence based on improper closing argument during the penalty phase. See Shurn v. Delo, 177 F.3d 662 (8th Cir. 1999), cert. denied 120 S.Ct. 510 (1999); Antwine v. Delo, 54 F.3d 1357 (8th Cir. 1995); Newlon v. Armontrout, 885 F.2d 1328 (8th Cir. 1989). As we have stated, "[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue." Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999).

The arguments in the Newlon, Antwine, and Shurn cases bear many similarities to the argument here, and provide a framework for analysis of the closing argument in this case. In Newlon, the prosecutor expressed his personal belief in the propriety of the death sentence and implied that he had special knowledge outside the record; emphasized his position of authority as prosecuting attorney of St. Louis; attempted to link the defendant with several well-known mass murderers; appealed to the jurors' personal fears and emotions; and asked the jurors to "Kill him now. Kill him now." Newlon, 885 F.2d at 1335. An almost identical argument, made by the same prosecutor, was involved in Shurn. See Shurn, 177 F.3d at 667. In Antwine, the prosecutor stated that death in the gas chamber would be "instantaneous" and argued that the taxpayers should not have to continue to pay for the defendant's room and board while he continued to live in prison. See Antwine, 54 F.3d at 1362-1363.

Here, as in Newlon, the prosecutor referred to facts not in evidence (the other murders in all of Missouri's history); drew a comparison to violent drug gangs, evoking the jury's fear of crime; and made references to his son and the defense attorney's son. This was the sort of argument that would result in "mob justice" rather than result in a reasoned deliberation. Shurn, 177 F.3d at 668 (Wollman, J., concurring). Far from being an isolated comment, the improper statements formed the crux of the prosecutor's argument for imposing the death penalty. The improper argument would have had a significant prejudicial effect on the jurors, and it was unreasonable, in light of Supreme Court precedent, to conclude that the argument did not result in a deprivation of due

9

process. The district court correctly determined that the argument was improper and the failure to object to the argument constituted ineffective assistance of counsel. Accordingly, the petitioner's death sentence is vacated.

B. Guilt Phase

The petitioner further argues that she is entitled to a new trial because improper portions of the prosecutor's closing argument during the guilt phase of the trial deprived her of due process. We do not agree. The improper portions of the argument occurred when the prosecutor stated that this was the strongest case for deliberation in Missouri; asserted that these were the worst crimes ever to happen in Missouri; and, at one point, compared his own "traditional" marriage to the petitioner's marriage.

The district court stated that "[t]o describe the statements as improper is charitable," but held that the result would not have been any different, given the strong evidence of guilt against the defendant. Copeland v. Washington, No. 97-1123-CV-W-3, slip op. at 26. Under the framework articulated in the previous section, this is a close question, as the argument approaches the line between prejudicial and non-prejudicial argument. However, unlike the argument in the penalty phase, the improper remarks were isolated, only a portion of a much longer argument, and were countered by defense counsel in closing. In summary, the district court properly performed a careful analysis of each challenged remark and concluded that the prejudice to the petitioner was not significant.

## III.  BATTERED SPOUSE DEFENSE

A.    Penalty Phase

The petitioner was allowed to introduce expert testimony regarding battered spouse syndrome at the penalty phase of the proceedings.  She contends, however, that the state's expert testimony should not have been admitted and that her counsel failed to investigate adequately.

On the ineffective assistance claim, the petitioner specifically cites a neighbor's report that Ray hit petitioner in the back with a board while the two were mending a fence.  Counsel failed to introduce the report at the penalty phase.  The district court found this omission harmless, given that other witnesses testified that Ray Copeland had treated petitioner "like trash."  Copeland v. Washington, No. 97-1123-CV-W-3, slip op. at 35.

The petitioner also argues that the testimony of Dr. Jacks, who had performed a court-ordered interview to determine the petitioner's competency, violated her right against self-incrimination and her right to counsel.  At the penalty phase, Jacks testified that the petitioner did not have symptoms consistent with battered spouse syndrome.  As the state could rebut expert testimony with its own expert witnesses, there was no error in Jacks' testimony.  Cf. Buchanan v. Kentucky, 483 U.S. 402 (1987).

What is far more troubling about these two claims is that Jacks later submitted an affidavit stating that had he been aware of the incident with the board, he could not have testified that the petitioner did not have symptoms stemming from battered spouse syndrome.  Further, a portion of the prosecutor's closing argument used Dr. Jacks' testimony to rebut the testimony of the petitioner's expert witness.  As we have already determined that the penalty phase was constitutionally flawed due to the prosecutor's

11

improper closing argument and are already granting relief on the penalty phase, we need not reach this issue.

## B. Guilt Phase

The petitioner was not allowed to present expert witness testimony on battered spouse syndrome during the guilt phase of the proceedings. As the petitioner was not prevented from presenting exculpatory evidence, a new trial is not required. The evidence was excluded because trial counsel failed to give notice of a diminished responsibility defense as required by Missouri statute.[3] However, numerous witnesses, including the petitioner's children and other family members, did have the opportunity to testify and recount their observations of the way in which the petitioner was treated by her husband.

## IV. OTHER ARGUMENTS

(1) Mootness of the Case

The petitioner claims that the state's appeal is moot for because the state failed to receive a stay of the district court's order, in accordance with Federal Rule of Appellate Procedure 8. However, as the state correctly points out, the district court's opinion states: "Within forty-five days after this Order becomes final (<u>including any appeals that may be taken</u>), the state shall either commence with the new sentencing hearing or set Petitioner's sentence at life in prison without the possibility of parole." <u>Copeland v. Washington</u>, No. 97-1123-CV-W-3, slip op. at 62-63 (emphasis added).

---

[3]The defendant apparently no longer argues that the failure to give notice of a diminished capacity defense was ineffective assistance of counsel. In any event, the district court held that the issue had been waived. <u>See</u> <u>Copeland v. Washington</u>, No. 97-1123-CV-W-3, slip op. at 34.

The language of the district court's opinion, then, indicates that this appeal is properly before us.[4]

(2) Sufficiency of the Evidence

The petitioner argues that there was insufficient evidence adduced at trial to support her convictions for the first degree murders, and, thus, her due process rights were violated.[5] We do not agree. As described in the facts section, there was considerable evidence to support the convictions, including her storage of the victims' clothes; her assistance with the paperwork and the bank accounts involved in the fraud; her efforts to obviate any connection with the transients; the x's on a list of names, marking those who had been killed; and the letters to her husband regarding the searches of the farm. Altogether, when viewed in the light most favorable to the verdict, there was sufficient evidence to prove that the petitioner aided, agreed to aid, or attempted to aid her husband in committing the murders. See Mo. Rev. Stat. § 562.041; State v. Ferguson, 887 S.W.2d 585 (Mo. 1994) (en banc). We therefore agree with the district court that the petitioner is not entitled to relief on this basis.[6]

---

[4]Of course, the better practice would have been for the state to have both filed an appeal and sought a stay. See Burdine v. Johnson, 87 F.Supp.2d 711, 713-714 (S.D. Tex. 2000) (ordering defendant released due to state's failure to obtain stay in accordance with district court's opinion).

[5]The petitioner further argues that, under Enmund v. Florida, 458 U.S. 782 (1982) and Tison v. Arizona, 481 U.S. 137 (1987), her participation was legally insufficient to support the imposition of the death penalty under the Eighth Amendment. Given that we are granting relief from the sentencing hearing, we find it unnecessary to reach this argument.

[6]The defendant also claims that there was insufficient evidence of her individualized involvement to support the two aggravating factors for imposing the death penalty at her sentencing hearing: (1) murder for profit; and (2) murder to silence potential witnesses. Because we are granting relief from the sentencing hearing, we

(3) Certificate of Appealability

The petitioner argues that the district court erred in denying her a certificate of appealability on two claims: (1) that the trial judge was biased; (2) that certain of her statements were obtained in violation of her Miranda rights. The district court analyzed the merits of both issues, see Copeland v. Washington at 16-18, 59-60, and ultimately concluded that neither of these claims warranted relief. The district court, in this instance, properly denied a certificate of appealability, as the petitioner had not made a substantial showing of the denial of any federal constitutional right. See 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 520 (8th Cir. 1997).

## V. CONCLUSION

We conclude that the prosecutor's closing argument in the penalty case deprived the petitioner of due process in her sentencing hearing. The district court thus correctly granted a writ of habeas corpus and properly ordered that the state either hold a new sentencing hearing or commute the petitioner's sentence to life in prison without the possibility of parole. We have reviewed the petitioner's other claims of error in support of a new trial, and conclude that a new trial is not warranted. The order of the district court is affirmed in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

find it unnecessary to reach this claim.