# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-1537/01-1538

_____

Joseph E. Whitfield,           *
                                  *

     Cross-Appellant/Appellee,    *

                                  *   Appeals from the United States
     v.                               *   District Court for the
                                  *   Eastern District of Missouri.

Michael Bowersox, Superintendent,   *
Potosi Correctional Center;         *
Jeremiah Nixon, Attorney General,    *
State of Missouri,                *
                                  *

     Appellants/Cross-Appellees.    *

_____

Submitted: May 13, 2002

Filed: April 7, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Joseph Whitfield (Whitfield) was sentenced to death after being convicted of first degree murder and armed criminal action. The Missouri Supreme Court affirmed the conviction and sentence. Whitfield filed a timely petition for writ of habeas corpus under 28 U.S.C. § 2254 (1994 ed. Supp. IV 1998). The federal district court vacated Whitfield's death sentence, finding the state court erred in determining Whitfield voluntarily waived his right to testify during the penalty phase of his trial.

The State of Missouri (State) appeals the ruling. Whitfield cross-appeals, challenging the denial of the portions of his habeas petition based on (1) alleged ineffective assistance of counsel related to the cross-examination of two witnesses and (2) alleged trial court error in denying Whitfield's motion for a new trial based on newly discovered evidence. We affirm the district court's denial of habeas corpus relief related to Whitfield's claims. However, we reverse the district court on the issue of the right to testify.

## I.   FACTUAL BACKGROUND

On January 20, 1988, Ronald Chester (Chester), a paraplegic, was conducting errands with the assistance of Maria Evans (Evans). Chester was in the vehicle's driver's seat, with his wheelchair in the front passenger area. Chester was driving and Evans would get out of the backseat to pick up dry cleaning and mail, to pump gas, and to purchase money orders for Chester. After stopping briefly for a social visit, Chester agreed to give Whitfield and his young daughter, Jody, a ride home. Whitfield, Evans and Jody were all seated in the back. Whitfield directed Chester to a location where Whitfield asked Chester to wait with Jody while he picked up a package. Whitfield exited the vehicle to purchase heroin from Charles Porter (Porter), who was in a vehicle parked nearby with Linda Scott (Scott). Porter refused to sell to Whitfield, who did not have any money. Porter then gave a handgun to Whitfield, who returned to Chester's vehicle. Whitfield struck both Chester and Evans in the head with the handgun. Varney Bolden (Bolden) approached the vehicle and told Whitfield to shoot Chester and Evans.

Evans testified Whitfield shot Chester from inside the back of the vehicle, while Scott testified Whitfield shot Chester from outside the vehicle. Chester died from two gunshot wounds to the head. Additional shots were fired into the vehicle at Evans, who suffered a gunshot wound to the hand, and who played dead. The vehicle rolled forward, and Whitfield and Bolden removed Jody from the vehicle.

Whitfield alleges Bolden did the shooting. Bolden was acquitted of murder charges in 1991. The .38 caliber Smith & Wesson used in the shootings was discovered by the police in Whitfield's apartment. Whitfield admitted the gun was his, but claimed he was "set up."

## II.   PROCEDURAL BACKGROUND

On December 2, 1989, a jury found Whitfield guilty of first degree murder, first degree assault, and two counts of armed criminal action, and assessed punishment as death for the murder and consecutive life sentences for the remaining convictions. The conviction was reversed on direct appeal, due to surprise evidence and improper conduct by the prosecutor, and the case remanded for a new trial. Missouri v. Whitfield, 837 S.W.2d 503 (Mo. 1992) (en banc).

On retrial, a jury found Whitfield guilty of first degree murder for the shooting death of Chester, and armed criminal action for the injuries to Evans. Unable to agree on the penalty, the jury deadlocked 11-1 in favor of a life sentence. On April 8, 1994, the state trial court held a hearing on post-trial motions and sentencing. On June 23, 1994, after denying the post-trial motions, the state trial court sentenced Whitfield to death for the murder conviction, and to life imprisonment for the armed criminal action.[1] Whitfield did not make a statement on June 23 before he was sentenced.

Whitfield subsequently filed a motion for post-conviction relief in state court pursuant to Missouri Supreme Court Rule 29.15. After an evidentiary hearing, the state trial court denied the motion. The Missouri Supreme Court affirmed Whitfield's

---

[1]We decline to address whether the death sentence imposed by the state court contravenes the holding in Ring v. Arizona, 122 S. Ct. 2428 (2002). As we recognized in Moore v. Kinney, 320 F.3d 767, 771 n.3 (8th Cir. 2003) (en banc), the Supreme Court has not expressly made Ring retroactive, and "[a]bsent an express pronouncement on retroactivity from the Supreme Court, the rule from Ring is not retroactive."

conviction, sentence, and post-conviction ruling. Missouri v. Whitfield, 939 S.W.2d 361 (Mo. 1997) (en banc).

Whitfield timely petitioned the federal district court for a writ of habeas corpus, which was granted as it relates to Whitfield's right to testify during the penalty phase of the trial. The federal district court vacated the death sentence. The court denied the writ on the remaining issues, but certified three issues for appeal: (1) whether the state court erred in determining Whitfield voluntarily waived his right to testify during the penalty phase of his trial; (2) whether Whitfield's trial counsel rendered ineffective assistance of counsel related to the cross-examination of two witnesses; and (3) whether the state court erred in denying Whitfield's motion for a new trial based on newly discovered evidence.

## III.  DISCUSSION
### A.    Standard of Review

In an appeal on a habeas petition under § 2254, we review the district court's findings of fact for clear error and its conclusions of law de novo. Randolph v. Kemna, 276 F.3d 401, 403 (8th Cir. 2002). Relief will be granted to a § 2254 petitioner only if the adjudication by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." Kenley v. Bowersox, 275 F.3d 709, 711 (8th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)-(2)). Additionally, the state court's "factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Id. at 711-12 (citing 28 U.S.C. § 2254(e)(1)).

### B.    Waiver of the Right to Testify

Whitfield contends the state trial court erred when it did not secure an explicit waiver of his right to testify during the penalty phase of the trial. The federal district court determined the record does not support the state court's finding of waiver of the

-4-

right to testify. The government appeals arguing the record supports the finding made by the state court.

The United States Supreme Court has explicitly recognized the constitutional right of a criminal defendant to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 49-53, 62 (1987) (holding a per se rule excluding hypnotically refreshed testimony impermissibly infringed on a defendant's right to testify under the Fifth, Sixth and Fourteenth Amendments). The defendant has the "ultimate authority" to decide whether to testify on his own behalf. Jones v. Barnes, 463 U.S. 745, 751 (1983). However, a defendant's right to testify is nonetheless circumscribed by procedural and evidentiary rules, when the rules are neither arbitrary nor disproportionate to the right. Rock, 483 U.S. at 55-56.

"We cannot presume a waiver of . . . important federal rights from a silent record." Boykin v. Alabama, 395 U.S. 238, 243 (1969). "The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." Id. However, "[a] fundamental choice over which the defendant has the ultimate decision can be knowingly and voluntarily waived if, by his or her silence, the defendant apparently acquiesces to the waiver." United States v. Washington, 198 F.3d 721, 724 (8th Cir. 1999).

The trial court makes a factual determination about whether conduct exists concerning waiver; however, whether such conduct results in a waiver is a matter of law. See Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). Whether counsel advised the defendant about his right to testify and whether he accepted the recommendation not to testify are findings of fact. Id. A voluntary and knowing waiver of the right to testify may exist where the defendant remained silent after counsel rested. Id. In Frey, the record evidence showed: (1) the petitioner's counsel informed him he had the right to testify, but advised against it; (2) counsel testified the petitioner accepted the advice; (3) the petitioner was present when the trial court

stated he "may testify if he wants to," but had no obligation to do so; and (4) the petitioner was a sophisticated businessman who remained silent when his counsel rested the case without calling him to testify. Id.

We have held a defendant must exercise his right to testify by affirmative action at the appropriate time, or else a knowing and voluntary waiver of the right to testify is deemed to have occurred. United States v. Blum, 65 F.3d 1436, 1444 (8th Cir. 1995) (holding defendant waived her right to testify where she chose not to testify, and then, after the close of evidence, sent a note to the court stating she had changed her mind); United States v. Stewart, 20 F.3d 911, 917 (8th Cir. 1994) (affirming waiver where pro se defendant did not present evidence, but stated his desire to testify only after the trial court said it would next hear closing arguments, the trial court did not re-open the case); El-Tabech v. Hopkins, 997 F.2d 386, 388-89 (8th Cir. 1993) (finding sufficient evidence of waiver where trial counsel testified petitioner decided not to testify and was silent through jury instruction conference, discussing petitioner would not be testifying, even though petitioner claimed he raised his hand to testify during trial). "A defendant's right to testify is not unqualified." Stewart, 20 F.3d at 917.

"The defendant may not . . . indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" United States v. Bernloehr, 833 F.2d 749, 752 (8th Cir. 1987) (finding waiver where petitioner made no objection when his counsel rested without calling him). In Bernloehr, petitioner's counsel informed the jury that petitioner would testify and even called Bernloehr to testify. However, after a brief recess, counsel called a different witness to testify. Id. at 750. Then at a side bar, counsel told the trial court Bernloehr wanted to testify, but would "accede" to the advice of counsel not to testify. Id.

After Whitfield's sentencing, the state trial court held a hearing as part of the Rule 29.15 post-trial motion. Whitfield did not testify at the hearing. Whitfield's trial attorney testified at the hearing that Whitfield had made the final decision not to testify at his trial. She also testified she had discussed with Whitfield his right to testify and had advised, for unspecified trial strategy reasons, that he not testify. Whitfield contends no sound strategy reasons exist for the decision. The State argues the record supports that it was a reasonable trial strategy to advise Whitfield not to testify, particularly because Whitfield would have been a bad witness by exhibiting self-pity, arrogance, lack of remorse after the guilt phase was completed, and information about his prior criminal history could emerge.

Just before the penalty phase began Whitfield said, "I would like to explain my situation and Joe Whitfield in its entirety without being interrupted, if I may, because my life is on the line." The trial court stated, "You have the right to testify or not to testify and that right is yours alone." The trial court denied Whitfield the opportunity to explain his situation in a narrative form, without cross-examination. The trial court instructed Whitfield that whether he testified was a matter between him and his attorney.[2]

---

[2]    WHITFIELD: Sir, for six years I've been going through this and I haven't taken the stand yet. All right. I've never taken the stand before in my life. There's no one in the world can talk about Joe Whitfield like Joe Whitfield can talk about Joe Whitfield. I would like to explain my situation and Joe Whitfield in its entirety without being interrupted, if I may, because my life is on the line.

. . .

THE COURT: Let me respond to that in two ways, Mr. Whitfield. As I told you awhile back when we first got together, you have the right to testify or not to testify and that right is yours alone.

WHITFIELD: Yes, sir.

At the conclusion of the State's evidence, Whitfield's counsel presented seven witnesses and rested without comment or objection by Whitfield. At the conclusion of all evidence, the trial court asked counsel whether all evidence had been presented to the jury. Defense counsel explained Whitfield "reserved the right to testify to the

---

THE COURT: And no inference can be drawn from your silence. As to whether you are called as a witness by your attorney, I do not wish to interfere with your relationship with your attorney. I leave that to you and she to work out.

If you are – the only circumstances under which you would be permitted to speak to the jury, as far as I can tell at this point in time, is if you are called as a witness and you would be subject to cross-examination and the usual rules of any witness.

So in other words, in terms of being allowed to address the jury in a narrative form, give a speech to the jury, I'm not prepared to allow that at this time. So that's all I can tell you at this point in time.

. . .

Mr. Whitfield, notwithstanding what the jury may assess and declare, the final sentence will be pronounced by me. I can assure you that you will be given the opportunity to say whatever you want to me before sentence is pronounced.

WHITFIELD: Your Honor, I've been sitting at this table – this is the second time looking like a dummy, you know. And I've been persecuted up here and I haven't had the chance to even talk about me. Do you see what I'm saying?

THE COURT: I understand that. So I think I have to limit my response to what I've just indicated but we can revisit the issue when the State's case is concluded. Okay?

WHITFIELD: Yes, sir.

-8-

Court at allocution," but there was nothing further for the jury. Again Whitfield did not comment or object. After the jury instructions were read, closing arguments were heard, and the jury began to retire, Whitfield asked, "Can I talk on my own behalf?" Whitfield said, "I'm not here to plead for my life. Get out of my face, woman." Whitfield spoke in a "very loud voice," directing the last comment to his counsel as he was standing and gesturing. The trial court asked him to be in order. The jury retired to deliberate without hearing Whitfield make a statement. Whitfield did make a statement to the court before sentencing.

On direct appeal, the Missouri Supreme Court rejected Whitfield's claim, finding waiver and stating Whitfield could have testified along with his other witnesses, but could not talk extemporaneously to the jury. Whitfield, 939 S.W.2d at 371-72. The court also relied on Whitfield's failure to testify at the Rule 29.15 hearing or to refute Whitfield's trial counsel's testimony. Id. The federal district court determined the evidence of waiver on the record, including trial counsel's Rule 29.15 testimony, related to the guilt stage rather than the penalty stage of the trial. According to the district court, the record did not support the finding that Whitfield had waived his right to testify during the penalty phase.

Additionally, Whitfield argues the trial court ignored his initial request to testify, at the beginning of the penalty phase, and that the trial court misled him into thinking the decision was that of the attorney, not his own. The State contends Whitfield waived his right to testify because he did not assert a timely request, as the first request was too early and the second was too late.

Whitfield did make a lengthy statement during the April 8, 1994 post-trial hearing before being sentenced. The statement is a narrative, which was not given under oath or with the benefit of cross-examination. Whitfield now attests the narrative is what he would have testified about during the penalty phase. The narrative includes Whitfield's life history, prior convictions, prior involvement with

law enforcement, his belief regarding the motivations of the police in this case, and a detailed version of the events of January 20, 1988. In his statement, Whitfield professed his innocence, blamed another for the Chester killing and contended he was the victim of the prosecuting attorney's vendetta against Whitfield and his wife for failing to testify against a person who years before had shot Whitfield's pregnant wife, killing their baby. The State argues the content of the narrative given by Whitfield does not create a reasonable probability that the outcome of the penalty phase would have been different. Further, the ultimate sentencer – the state court trial judge – did hear the narrative and sentenced Whitfield to death based on the conviction and on the fact that this was Whitfield's third killing.

No explicit, clear or obvious waiver of the right to testify at the penalty phase exists on the record. Whitfield did ask to testify before and after the penalty phase. However, Whitfield did not speak up when his attorney stated in open court that Whitfield had no further evidence to present to the jury, but reserved the right to allocute prior to sentencing.

Whitfield's trial counsel testified she and Whitfield discussed his testifying and it was Whitfield's decision not to testify. Whitfield clearly waived his right to testify during the guilt phase. However, the trial counsel's testimony is ambiguous about whether she meant she discussed with Whitfield his right to testify at both phases of the trial or only at the guilt phase.

The state court found Whitfield had agreed with his trial counsel not to testify after being advised he may do so. Id. at 372. We presume this finding to be correct because it is fairly supported by the record and we ascertain no clear and convincing evidence to the contrary. The guilt-phase waiver, considered with his silence at the conclusion of evidence during the penalty phase and with his counsel's comments that he would make an allocution statement before sentencing, all support waiver.

-10-

Whitfield was no stranger to criminal proceedings, as evidenced by his criminal history.  The procedural limitations to the right to testify at trial reinforce the finding that Whitfield's conduct constituted waiver.  Whitfield sought to speak before the penalty phase. Whitfield then sat silent while his counsel stated she had no additional evidence, except that Whitfield wanted to make a statement before sentencing.  As evidenced by his allocution to the state trial court given during the post-trial hearing, Whitfield sought to deliver a narration to the jury without being subjected to cross-examination, which is not allowed.

The state court's decision that Whitfield voluntarily and knowingly waived his constitutional right to testify is not contrary to, and does not involve an unreasonable application of, clearly established federal law, or result in a decision that was based on an unreasonable determination of the facts.  Therefore, we reverse the district court's grant of habeas corpus relief on this claim.

## C.    Ineffective Assistance
### 1.    Right to Testify

Whitfield's claim regarding his constitutional right to testify also relates to whether he received effective assistance of counsel during the penalty phase of his trial.  To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984). Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Our review of the record convinces us that Whitfield's trial counsel acted within the wide range of reasonable competence demanded by the Sixth Amendment when she advised Whitfield not to testify. See Preston v. Delo, 100 F.3d 596, 603-05 (8th Cir. 1996) (finding counsel was not ineffective where he did not have defendant

-11-

testify or introduce any mitigating evidence during the penalty stage due to strategy reasons); El-Tabech, 997 F.2d at 389-90 (finding no ineffective assistance where evidence of waiver is in the record and defendant was silent through jury instruction conference discussing him not testifying); Bernloehr, 833 F.2d at 752 (finding no ineffective counsel where defendant argued his will was overborne by counsel, although he made no objection when his counsel rested without calling him).

With regard to prejudice, the State argues Whitfield's failure to testify at the post-conviction Rule 29.15 hearing precludes a finding of Strickland prejudice. See Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994) (en banc) (denying relief under pre-AEDPA standards where petitioner never indicated what his testimony would have been). The State complains that the district court scoured the record looking for evidence of prejudice, but did not adequately explain a source or method of the prejudice. Whitfield argues he need not show prejudice because prejudice is presumed due to the trial court error. Additionally, Whitfield contends a reasonable probability exists that if Whitfield had testified, the holdout juror would have been persuaded to sentence him to a life sentence.

No evidence or argument exists supporting Whitfield's contention his testimony would have made a difference to the jury. Whitfield's counsel had reasonable strategy reasons, based on her professional evaluation of the case, for advising Whitfield to refrain from testifying. Further, Whitfield made his allocution statement before the final sentencer in this case, the judge. Whitfield's statement professed innocence, blamed his situation on a vendetta by the prosecuting attorney and reargued the case facts, with no sympathy expressed for the victims.

Whitfield has not shown his trial counsel's performance was deficient, nor that he suffered any prejudice. We therefore hold that Whitfield was provided with effective assistance of counsel regarding his right to testify at the penalty stage.

## 2.    Cross-Examination

Whitfield contends he received ineffective assistance of counsel during the guilt phase of his trial due to his counsel's treatment of witnesses Evans and Scott. Whitfield argues defense counsel was ineffective in her cross-examination of Evans in the following respects:  (1) failure to impeach with prior statements; (2) failure to question about whether the rear window was partially down or whether the door was opened or closed; and (3) failure to question about pathological and physical evidence.

Shortly after the shooting, Evans, the injured eyewitness, gave three statements to police officers.  The statements were not identical to each other.  Evans first indicated her eyes were closed at the time she heard the shot, and later stated her eyes were open just before the shot.  Additionally, in one statement, she said Bolden had directed Whitfield to shoot Chester and her, but Whitfield had refused.  Whitfield's counsel tried to impeach Evans with the statement where she told an officer Whitfield refused to commit the shooting.  Whitfield's counsel referred to the wrong officer, by name.  Evans truthfully denied making such a statement to that officer.  Later, Whitfield's counsel read Evans's actual statement to the jury.  Counsel elected to read the statement into evidence rather than play the audiotape version.

Evans testified during a deposition that Whitfield, while seated behind Chester and holding a handgun in his right hand, shot Chester in the back right side of his head.  At trial, Whitfield's counsel did not ask Evans to testify about Whitfield's positioning in the vehicle or which hand he had used for the shooting.  Additionally, scientific evidence indicated the bullets entered Chester's head from the left side on a downward path toward the right side.  Whitfield's argument at trial was that the shooter had to have been standing outside the vehicle.

The Eighth Circuit has found constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible

devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements. See Hadley v. Groose, 97 F.3d 1131, 1135-36 (8th Cir. 1996) (finding police report grossly inconsistent where officer testified two sets of footprints were the same when report said the footprints were different); Driscoll v. Delo, 71 F.3d 701, 709-11 (8th Cir. 1995) (testifying witness stated he saw defendant stab victim, but counsel failed to cross-examine with a prior statement where witness said he was not present during the stabbing). A failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt. Id. at 711.

In this case, the errors alleged by Whitfield do not rise to the level of constitutionally ineffective assistance of counsel. Although not perfect, counsel did not allow inadmissible devastating evidence to be entered or grossly inconsistent prior statements to go unchallenged. Evidence supporting Whitfield's theory of another shooter was entered into evidence. And, although later in time, counsel introduced evidence of the prior inconsistent statements. Whitfield's counsel made closing arguments consistent with the defense theory of the case based on this evidence. Therefore, we find the state court's determination that counsel's performance was not constitutionally deficient in her treatment of Evans is not an unreasonable application of clearly established federal law.

Regarding Scott, another witness, Whitfield argues his counsel (1) failed to confront her with a prior statement in which she had stated the assailant was standing outside the vehicle, and (2) failed to depose Scott. Scott witnessed the shooting from a vehicle parked a short distance from Chester's vehicle. Before the shooting, Whitfield talked to Scott's companion, Porter, about purchasing heroin. At trial, Scott testified the handgun used by Whitfield had been given to him by Porter who had received it from Scott, herself. Before trial, Scott told Whitfield's counsel over the phone that the shooter was standing outside the vehicle, but Scott did not comment

on the shooter's location during trial. On the other hand, Scott also testified she saw the shooter, whom she identified as Whitfield. Scott further testified Bolden did not approach the vehicle until sometime after the shooting.

We find the state court's determination, that Whitfield's counsel's performance was not constitutionally ineffective in her treatment of Scott, was not an unreasonable application of clearly established federal law. Counsel interviewed Scott over the telephone before she testified at trial. When viewed in conjunction with the other evidence at trial, Scott's testimony with the alleged errors is not significant. Scott's impeachable testimony was not devastating because, although Scott stated the shooter was outside the vehicle, she also identified Whitfield as the shooter and placed Bolden, whom Whitfield contends did the shooting, completely away from the vehicle. Therefore, the prior statement was not grossly inconsistent.

Whitfield has not shown his trial counsel's performance was deficient, nor that he suffered any prejudice. We therefore hold the state court did not unreasonably apply clearly established federal law in determining Whitfield received effective assistance of counsel regarding the cross-examination of Scott and Evans.

### D.    Motion for New Trial

Whitfield argues the state trial court violated his Fifth and Fourteenth Amendment rights by denying his motion for a new trial. The motion for a new trial was based on new evidence provided by Willie Gream (Gream). Gream would have testified that, on the night of the killing, Gream heard Bolden complain that Chester had stolen money from him, and Bolden then grabbed a handgun and went out to Chester's vehicle, shooting into it. Gream did not hear about Whitfield's trial until 1993. Gream provided an affidavit to the defense team in March of 1994, which was before sentencing, but after the second conviction.

A Missouri defendant seeking a new trial based on newly-discovered evidence must establish:

> (1) the evidence has come to the knowledge of the defendant since the trial;
> (2) it was not owing to want of due diligence that it was not discovered sooner;
> (3) the evidence is so material that it would probably produce a different result on a new trial; and
> (4) it is not cumulative only or merely impeaching the credit of the witness.

Whitfield, 939 S.W.2d at 367 (citing Missouri v. Amrine, 741 S.W.2d 665, 674 (Mo. 1987) (en banc)). "New trials on the basis of newly discovered evidence are not favored, and the trial court is vested with substantial discretion in deciding whether such should be granted." Amrine, 741 S.W.2d at 674. "The Constitution itself, of course, makes no mention of new trials." Herrera v. Collins, 506 U.S. 390, 408 (1993).

Whitfield argues his case is governed by Chambers v. Mississippi, 410 U.S. 284, 294 (1973). Chambers states, "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Id.

In this case, the state court denied the motion for a new trial because the new evidence "would not probably produce a different result on a new trial" for two reasons. First, the trial court found Gream's testimony not credible because he was a convicted felon who did not come forward until after trial (and after Bolden was acquitted) and whose story conflicted with other defense testimony. Whitfield, 939 S.W.2d at 367. Second, the trial court determined Gream's testimony would be, in

-16-

part, cumulative because another defense witness had testified the shooter was standing outside the car. Id.

We agree with the federal district court that the decision of the state court was not an unreasonable determination of the facts or an unreasonable application of clearly established federal law. The state trial court did not unfairly foreclose Whitfield from presenting evidence in his defense, but followed post-trial procedures to deny a new trial based on new evidence. Whitfield was given a fair opportunity to present evidence at trial and during the post-trial hearing. Even if Gream's testimony were taken as true, the remaining evidence would still support Whitfield's conviction. The jury heard two eyewitnesses identify Whitfield as the shooter, and one witness was sitting only a few feet away.

We have held that, "[t]o the extent petitioner attempts to couch his actual innocence claim in terms of a due process violation based upon the state court's denial of his motion for a new trial, petitioner does not allege an 'independent' constitutional violation." Allen v. Nix, 55 F.3d 414, 417 n.5 (8th Cir. 1995) (citing Herrera, 506 U.S. at 400, 407-12, 416). Whitfield argues Allen misinterprets Herrera and to the extent Allen is read to control this issue, it should be overruled.

While Whitfield contends he is actually innocent, as allegedly shown by the new evidence contained in Gream's testimony, the claim before this court is not based on Schlup v. Delo, 513 U.S. 298, 327-29 (1995) (providing procedural due process "gateway" to obtain review of otherwise barred substantive claims) or Herrera (providing a substantive "free standing claim of innocence, unconnected to any other constitutional violation"). See Cornell v. Nix, 119 F.3d 1329, 1333 (8th Cir. 1997). Moreover, the state trial court was able to assess the new Gream evidence contemporaneously with the evidence adduced at trial, because Whitfield challenged the conviction with Gream's testimony *before* his sentencing.

-17-

If, however, we construe his claim as one of actual innocence under Herrera, the claim fails. To prevail on a Herrera-type claim, the petitioner is held to an "extraordinarily high" standard. Herrera, 506 U.S. at 426. In fact, the petitioner must show new facts unquestionably establishing his innocence. Schlup, 513 U.S. at 317; Allen, 55 F.3d at 417 (cited by Cornell, 119 F.3d at 1334-35 (holding standard at least as stringent as clear and convincing)). Whitfield has failed to show new facts unquestionably establishing his innocence. While Gream's testimony may partially support Whitfield's trial theory, the testimony is suspect and contradicts other defense witnesses, as well as the prosecution's witnesses.

Despite the new evidence testimony of Gream, the state court's decision to deny Whitfield's motion for a new trial is not contrary to and does not involve an unreasonable application of clearly established federal law or result in a decision that was based on an unreasonable determination of the facts.

## IV.   CONCLUSION

Whitfield is not entitled to relief on his present application for a writ of habeas corpus. Accordingly, we affirm the district court's denial of relief based on (1) alleged ineffective assistance of counsel related to the cross-examination of two witnesses and (2) the denial by the trial court of Whitfield's motion for a new trial due to newly discovered evidence. However, we reverse the district court on the issue of Whitfield's right to testify during the penalty phase and remand to the district court for further proceedings consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

Twice Joseph Whitfield tried to exercise his right to testify at the penalty stage of his own trial. Yet, he was not permitted the opportunity to speak before the jury. I cannot agree that a defendant who asks directly, at two different times, to speak to the jury has somehow waived his right to testify. The trial court erred by not honoring Whitfield's invocation of his right to testify, and Whitfield's attorney was ineffective for failing to vindicate this right. Because Whitfield's sentencing proceeding was infected with constitutional error, I dissent.[3]

## I.    TRIAL COURT ERROR

A criminal defendant's right to testify in his own defense is a well-established and fundamental constitutional right. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). "The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution," id. at 51, including the Fifth, Sixth, and Fourteenth Amendments, id. at 51-53. Because this case involves the penalty phase of a trial, the right also finds support in the Eighth Amendment. See Copeland v. Washington, 232 F.3d 969, 974 n.2 (8th Cir. 2000) ("Indeed, if there is any distinction between the guilt and penalty phase arguments, it would seem that there should be a more searching review of the penalty phase as the Eighth Amendment is implicated.")

"Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right." United States v. Bernloehr, 833 F.2d

_____

[3]Ring v. Arizona, 122 S.Ct. 2428, 2443 (2002), effectively outlaws Missouri's capital sentencing system by requiring that death penalty determinations be made solely by a jury, rather than a judge. I agree with the majority that because no Ring issue was certified for appellate review we ought not address the matter at this time. Still, the question of whether or not Ring has applicability to Whitfield's case remains open.

749, 751 (8th Cir. 1987). I agree with the majority that a waiver of such a fundamental right may not be presumed from a silent record. <u>Ante</u> at 5 (quoting <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969)). I further agree that in Whitfield's case "[n]o explicit, clear or obvious waiver of the right to testify exists on the record." <u>Id.</u> at 10. Indeed, in stark contrast to affirmatively waiving his right to testify during the penalty phase, or even remaining silent on the issue, Whitfield vigorously attempted to exercise his right to testify, as is obvious from the following colloquy captured just before the penalty phase of the trial began:

> THE DEFENDANT: Your Honor, can I say something to you sir?
>
> THE COURT: Well, Mr. Whitfield, can it wait until the conclusion of the State's evidence?
>
> THE DEFENDANT: I just wanted to ask you a question.
>
> THE COURT: Okay.
>
> MS. MURPHY [DEFENSE COUNSEL]: I'd like the jury to not be brought in.
>
> THE COURT: I hope they're not out there.
>
> MS. MURPHY: Can we close the door?
>
> THE COURT: Can you hold them out there for a moment, Ms. Wafer? Okay, Mr. Whitfield.
>
> THE DEFENDANT: Sir, for six years I've been going through this and I haven't taken the stand yet. All right. I've never taken the stand before in my life. There's no one in the world can talk about Joe Whitfield like Joe Whitfield can talk about Joe Whitfield. I would like to explain my situation and Joe Whitfield in its entirety without being interrupted, if I may, because my life is on the line.

-20-

MS. MURPHY: Your Honor, could we do this -- could we make a record of -- as an offer of proof outside the presence of the jury of what he would have testified to if he were testifying in Court, perhaps at a later point in the trial?

THE COURT: Let me respond to that in two ways, Mr. Whitfield. As I told you awhile back when we first got together, you have the right to testify or not to testify and that right is yours alone.

THE DEFENDANT: Yes, sir.

THE COURT: And no inference can be drawn from your silence. As to whether you are called as a witness by your attorney, I do not wish to interfere with your relationship with your attorney. I leave that to you and she to work out.

If you are -- the only circumstances under which you would be permitted to speak to the jury, as far as I can tell at this point in time, is if you are called as a witness and you would be subject to cross-examination and the usual rules of any witness.

So in other words, in terms of being allowed to address the jury in a narrative form, give a speech to the jury, I'm not prepared to allow that at this time. So that's all I can tell you at this point in time.

Ms. Murphy, if I can interrupt, one other thing I might mention.

Mr. Whitfield, notwithstanding what the jury may assess and declare, the final sentence will be pronounced by me. I can assure you that you will be given the opportunity to say whatever you want to me before sentence is pronounced.

THE DEFENDANT: Your Honor, I've been sitting at this table -- this is the second time looking like a dummy, you know. And I've been persecuted up here and I haven't had the chance to even talk about me. Do you see what I'm saying?

THE COURT: I understand that. So I think I have to limit my response to what I've just indicated but we can revisit the issue when the State's case is concluded. Okay?

THE DEFENDANT: Yes, sir.

(Tr. on Appeal, Vol. V at 1753-55.)

To summarize, Whitfield began by asking permission to speak to the trial judge. Instead of simply addressing an inquiry from a man who was quite literally defending his life, the trial judge's response implied it was more important to move forward with the trial. Nonetheless, Whitfield persisted, and asked the judge if he could be permitted to speak to the jury. This can only be viewed as an unequivocal invocation of his right to testify,[4] testament that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green v. United States, 365 U.S. 301, 304 (1961).

Next, counsel's request to make a record of what Whitfield would say was wholly ignored. Rather, the trial judge told Whitfield that he could not "give a speech to the jury," and that he could only address the jury through being called as a witness by his lawyer. The court then reshaped the issue, shifting focus from Whitfield's right to testify to his right of allocution, and assured Whitfield that despite what the jury may decide, the judge would make a final determination of sentence, and Whitfield would be permitted to talk to the judge directly at a later hearing. While it may have calmed Whitfield to think that he would later be able to talk directly to the ultimate decisionmaker, the trial court's assurance was a clear and obvious

_____

[4]The majority notes that Whitfield was "no stranger to criminal proceedings," ante at 10, and thus he should have been able to easily navigate the labyrinthian procedural nuances of when, where, and how to testify before a jury. I would hold Whitfield, a man with no legal training and brain damage as a result of several head injuries, to a somewhat lesser standard than the majority.

-22-

misstatement: had the jury unanimously decided that Whitfield should receive life imprisonment, the trial judge could not have changed that sentence to one of death. See Mo. Rev. Stat. 565.030 (2002) (granting trial court no power to sentence capital defendant to death when jury is trier of fact in penalty phase and fixes punishment at life imprisonment). The importance of this point comes clearly into focus when one considers that the jury deadlocked eleven to one in favor of life imprisonment, even without Whitfield's testimony.

Next, the state then put in its case in chief. At the end of the state's case, one would expect the court to address Whitfield regarding his right and desire to testify, consistent with the court's pledge that it would "revisit the issue when the State's case is concluded." (Tr. on Appeal, Vol. V at 1755.) The record reveals, however, that no discussion between Whitfield or his counsel and the court regarding Whitfield testifying took place following the state's case in chief.

Defense counsel then put forth its case on behalf of Whitfield, never calling him to the stand. At the close of the defense case, when Whitfield had not testified, the court did not question Whitfield personally about the matter, or inform him of his continuing right to testify on his own behalf. Instead, the court merely asked Whitfield's attorney if "[t]hat concludes all of the evidence in this case," (Tr. on Appeal, Vol. VII at 2178), to which Whitfield's counsel responded that her client was reserving his right to allocution before the court.[5] When a criminal defendant speaks personally about his desire to tell the jury of his life circumstances in a death penalty case, it is incumbent upon the trial court to either honor the defendant's invocation

---

[5]Here again the trial judge gave Whitfield the impression that the court, and not the jury, would ultimately determine the sentence by stating "I will afford him ample opportunity to be heard before any sentence of death is passed, I can assure you." (Trial Tr. at 2179.) Missing from this statement, of course, is an accurate statement of the governing law – that if Whitfield had convinced the jury to vote unanimously in favor of life imprisonment, the court could not legally impose a sentence of death.

of this fundamental right, or question the defendant personally to assure his waiver of the right. See El-Tabech v. Hopkins, 997 F.2d 386, 389 n.3 (8th Cir. 1993) (noting question of whether court must conduct on the record colloquy with criminal defendant to ensure knowing and voluntary waiver of right to testify is "an issue of recent debate in academia and in the courts"); cf. Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002) (granting prisoner habeas relief where no evidence defendant understood his fundamental right to jury trial and trial court failed to question defendant personally regarding waiver of this right). Neither was done here.

Counsel then gave their closing arguments. After argument was complete, the following exchange occurred:

> THE COURT: Thank you, counsel.
>
> Ladies and gentlemen, I will ask you to retire to consider your verdict. I have to apologize for continually sending you out at mealtime.
>
> Mr. Whitfield, I have to ask you to retire in order.
>
> THE DEFENDANT: Can I talk on my own behalf?
>
> THE COURT: The jury will retire.
>
> THE DEFENDANT: I'm not here to plead for my life. Get out of my face, woman.
>
> THE COURT: Mr. Whitfield, you have to be in order, please. I have to ask you to be silent.

(Tr. on Appeal, Vol. VII at 2224.)

During this exchange, Whitfield rose from his seat, and pulled away from his attorney. He was then surrounded by sheriffs. Despite the unquestionable clarity of

-24-

Whitfield's second request to "talk on his own behalf," the court ignored his request and adjourned for the day, reconvening only after the jury returned its verdict.

In sum, it is clear to me, as it was to the district court, that Whitfield's obvious invocations of his right to testify were not honored by the trial court; for the majority to hold otherwise stretches the governing law and the facts of this case beyond their elasticity. A finding that despite Whitfield's two distinct requests to speak to the jury, he somehow, through his silence during the proceedings between those requests, indicated his desire not to testify, is an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Moreover, it is an unreasonable application of clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), to hold that a defendant waives his right to testify when he asks twice to speak to the jury during the penalty phase of the trial and gives no affirmative indications to the contrary. I would affirm the district court's grant of habeas corpus relief on this claim.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

A habeas petitioner is entitled to relief on an ineffective assistance of counsel claim where counsel's performance was deficient and the petitioner was prejudiced by counsel's performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Here, Whitfield contends that his lawyer was ineffective for not asserting his right to testify at the penalty phase, and that counsel's failure was not based on any reasonable trial strategy. I agree.

Although the record in this case is voluminous, there is no evidence within it to suggest any possible strategy behind having Whitfield remain silent at the penalty phase of his trial. Even speculation does not shed light on the issue: tactical reasons for not testifying at the guilt phase, such as opening the door to evidence of Whitfield's criminal history, are not present at the penalty phase, where the defendant's criminal history can be introduced by the state. If anything, speculation

suggests that, because the jury had not heard from Whitfield throughout the entirety of the trial, he should testify in order to humanize himself before the jury. As he aptly put it, "no one in the world can talk about Joe Whitfield like Joe Whitfield can talk about Joe Whitfield." (Tr. on Appeal, Vol. V at 1753.) The record reveals no strategic basis for neglecting to exercise Whitfield's right to testify at the penalty stage, and thus Whitfield's counsel was ineffective for failing to vindicate the right.

Moreover, there is ample evidence in the record that Whitfield was prejudiced by his counsel's deficient performance. The jury deadlocked eleven to one in favor of life. Had Whitfield been able to present his personal testimony, he may well have changed the mind of the hold-out juror. See Strickland, 466 U.S. at 694 (holding defendant entitled to relief when counsel's errors "undermine confidence in the outcome" of the proceedings). Further, this is not a case like Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994) (en banc), where there was no evidence in the record as to what the defendant would have said if given the opportunity to testify.[6] On the contrary, Whitfield did address the court at a 1994 hearing on numerous defense motions, including a motion for a life sentence. In this statement, he speaks of his difficult life history and circumstances; his feelings toward his father ("[E]very time I look at my father I break up -- I love you, Daddy." (Supp. Tr. at 86)); his reputation in his community ("All the little kids in the neighborhood call me Uncle Joe. Whenever they got into trouble they'd come and talk to Uncle Joe." (Id. at 99)); and the effect that his execution would have on his daughter ("My wife was murdered in August of 1988. My daughter is in an orphanage right now." (Id.)). In short, Whitfield's statement attests to his worth as a human being, loaded with emotion for his family and the children of his community, and concern for the crucial bond between father and daughter. Had he been permitted to present this image to the jury,

---

[6] I note again that Whitfield's attorney asked to make a record of what he would testify to, but her request was ignored by the trial court. (Tr. on Appeal, Vol. V at 1754.)

the outcome of the preceding may have been different. Under our Constitution, Whitfield at least deserved the opportunity to speak. Failure to recognize as much was an omission that rendered his counsel ineffective. I would affirm the district court's grant of habeas corpus relief on this claim as well.

## CONCLUSION

Joseph Whitfield repeatedly asked the trial court to honor one request: allow him to testify on his own behalf. He attempted to exercise this most sacred constitutional right at least twice; nonetheless, the majority inexplicably concludes that, despite Whitfield's two emphatic requests to speak, he somehow waived the very right he was seeking to exercise. The creation of such a legal fiction has no place in a case where the defendant's life hangs in the balance. I agree with the district court that Whitfield was denied his right to testify at the penalty phase of his capital trial, and that his counsel rendered ineffective assistance by failing to call him as a witness. Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.